No. 26-1033

# In the
# United States Court of Appeals for the Third Circuit

RODERICK JOHNSON,

*Appellant,*

v.

CITY OF READING; ANGEL CABRERA; COUNTY OF BERKS; MARK C. BALDWIN; EDWARD D. RATAJACK, AS EXECUTOR OF THE ESTATE OF STAJKOWSKI; AND EILEEN K. CARDILE, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF BRUCE H. DIETRICH.

Appeal from the Order dated December 12, 2025, of the United States District Court for the Eastern District of Pennsylvania, at 5:21-cv-04860 (Gallagher, J.), granting summary judgment in favor of defendants and dismissing the civil rights and municipal liability claims

## BRIEF OF APPELLEES
### COUNTY OF BERKS AND EDWARD D. RATAJACK

Joshua W. Brownlie
MARSHALL DENNEHEY, P.C.
2000 Market Street, Suite 2300
Philadelphia, PA 19103
(215) 575-2816
JWBrownlie@mdwcg.com

*Attorney for Appellees County of Berks and Edward D. Ratajack*

# TABLE OF CONTENTS

Table of Authorities.................................................................................. ii

Counterstatement of Jurisdiction...............................................................1

Introduction...............................................................................................2

Concise Counterstatement of the Case.......................................................3

Summary of the Counterargument ...........................................................11

Counterargument .....................................................................................12

    I.     The Court should affirm the December 12, 2025, Order
            granting summary judgment in favor of Berks County..............12

        A.     The arguments Mr. Johnson advances on appeal were never
                presented to the District Court and are therefore forfeited. ...........14

        B.     The District Court correctly rejected the only theory of
                municipal liability Mr. Johnson actually litigated. ........................22

Conclusion ..............................................................................................26

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ................................................................................ 12, 13

*Barna v. Bd. of Sch. Dirs. of the Panther Valley Sch. Dist.*,
877 F.3d 136 (3d Cir. 2017) ................................................................. 15, 20, 21

*Brady v. Maryland*,
373 U.S. 83 (1963) ........................................................................................25

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ......................................................................................13

*City of Canton v. Harris*,
489 U.S. 378 (1989) ................................................................................ 12, 23

*City of St. Louis v. Praprotnik*,
485 U.S. 112 (1988) ......................................................................................17

*Connick v. Thompson*,
563 U.S. 51 (2011) ............................................................................. 23, 24, 25

*Dennis v. City of Philadelphia*,
19 F.4th 279 (3d Cir. 2021) ..................................................................... 15, 19

*Dennis v. Sec'y, Pennsylvania Dep't of Corrs.*,
834 F.3d 263 (3d Cir. 2016) (*en banc*) ..........................................................18

*Diaz v. FCA US LLC*,
134 F.4th 715 (3d Cir. 2025) ..........................................................................1

*Garza v. Citigroup Inc.*,
881 F.3d 277 (3d Cir. 2018) ..........................................................................18

*Gibson v. Superintendent of N.J. Dep't of Law & Public Safety-Div. of State Police*,
411 F.3d 427 (3d Cir. 2005) ...........................................................................10

*Greenlaw v. United States*,
554 U.S. 237 (2008) ......................................................................................15

*Hormel v. Helvering*,
312 U.S. 552 (1941) ......................................................................................15

*In re Westinghouse Sec. Litig.*,
90 F.3d 696 (3d Cir. 1996) ..............................................................................1

*Kost v. Kozakiewicz*,
  1 F.3d 176 (3d Cir. 1993) ...................................................................21

*Link v. Wabash R. Co.*,
  370 U.S. 626 (1962) .........................................................................21

*Margolin v. Nat'l Ass'n of Immigr. Judges*,
  146 S. Ct. 1285 (2026) .....................................................................15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) .........................................................................13

*McMillian v. Monroe Cnty., Ala.*,
  520 U.S. 781 (1997) .........................................................................17

*Panzarella v. Navient Sols., Inc.*,
  37 F.4th 867 (3d Cir. 2022) ............................................................12

*Pembaur v. City of Cincinnati*,
  475 U.S. 469 (1986) .........................................................................20

*Scott v. Harris*,
  550 U.S. 372 (2007) ......................................................................4, 12

*Simko v. United States Steel Corp.*,
  992 F.3d 198 (3d Cir. 2021) ........................................................ 15, 20

*Stanley v. City of Sanford, Fla.*,
  145 S. Ct. 2058 (2025) .....................................................................14

*United States v. Dupree*,
  617 F.3d 724 (3d Cir. 2010) ............................................................20

*United States v. Payo*,
  135 F.4th 99 (3d Cir. 2025) .............................................................20

*Univ. of Tennessee v. Elliott*,
  478 U.S. 788 (1986) .........................................................................17

**Statutes**

28 U.S.C. § 1291 ..................................................................................1

28 U.S.C. § 1331 ..................................................................................1

28 U.S.C. § 1367 ..................................................................................1

28 U.S.C. § 1738 ................................................................................17

28 U.S.C. § 2107 ..................................................................................1

42 Pa. C.S. § 9541 ...............................................................................4

**Rules**

3d Cir. L.A.R. 28.1 ................................................................................16

FED. R. CIV. P. 56 .......................................................................... 12, 13

**Other Authorities**

PA ST RPC NO. 3.3 ..............................................................................23

PA ST RPC NO. 3.4 ..............................................................................23

PA ST RPC NO. 3.5 ..............................................................................23

# COUNTERSTATEMENT OF JURISDICTION

The District Court possessed original subject-matter jurisdiction to decide the federal questions arising from alleged civil rights violations and derivative municipal liability. *See* 28 U.S.C. § 1331. It also possessed supplemental jurisdiction over the pendent claims asserted under Pennsylvania law because those torts form part of the same controversy as the federal causes of action. *See* 28 U.S.C. § 1367(a).

This Court possesses appellate jurisdiction pursuant to 28 U.S.C. § 1291. The December 12, 2025, Order granting summary judgment in favor of the defendants resolved all remaining claims as to all remaining parties and therefore constitutes a final decision. *See, e.g.*, *Diaz v. FCA US LLC*, 134 F.4th 715, 720 (3d Cir. 2025). Consequently, the Court possesses § 1291 jurisdiction to review the December 12th Order, as well as all interlocutory orders merged therein. *See In re Westinghouse Sec. Litig.*, 90 F.3d 696, 706 (3d Cir. 1996.

The appeal is timely because the District Clerk received the Notice of Appeal on January 7, 2026, twenty-six days after entry of the final Order. *See* 28 U.S.C. § 2107(a); *accord* JA48 at ECF Nos. 174–75.

1

## INTRODUCTION

This appeal seeks reversal based not on an error the District Court made, but on theories Mr. Johnson never asked it to decide. The theory litigated at summary judgment alleged that Berks County was deliberately indifferent by failing to implement adequate policies, training, supervision, and procedures governing the disclosure of favorable evidence in criminal prosecutions. The theories advanced on appeal—that post-conviction rulings were preclusive, that the Berks County District Attorney was the final policymaker, and that his alleged conduct itself constituted County policy—are different theories resting on different legal standards and evidentiary predicates.

Those distinctions resolve this appeal. Mr. Johnson cannot obtain reversal based on theories he never presented to the District Court, and the only theory he did litigate fails because the summary judgment record contains no evidence from which a reasonable jury could find deliberate indifference. The District Court therefore correctly entered summary judgment in favor of Berks County.

This Court should AFFIRM.

2

## CONCISE COUNTERSTATEMENT OF THE CASE

Appellant / Plaintiff Roderick Johnson alleges that law enforcement violated his civil rights in connection with two murder prosecutions brought by the Berks County District Attorney's Office. The first concerned the December 8, 1996, shooting deaths of cousins Damon and Gregory Banks; the second concerned the November 1, 1996, shooting death of José Martinez. Berks County District Attorney Mark C. Baldwin personally prosecuted both cases, and Berks County juries convicted Mr. Johnson of crimes including first-degree murder.

Years later, Mr. Johnson obtained collateral relief. His three murder convictions were vacated because the criminal proceedings were conducted without constitutionally adequate process. The prosecutions ultimately terminated when the Court of Common Pleas of Berks County concluded that the Double Jeopardy Clause of the Pennsylvania Constitution barred further prosecution.

The criminal litigation spanned more than two decades. Because only a small portion of that extensive procedural history bears on the issues presented in this appeal, Berks County summarizes below only the background necessary to resolve those issues.

On November 25, 1997, a Berks County jury convicted Mr. Johnson of two counts of first-degree murder in connection with the shooting deaths of cousins Damon and Gregory Banks. *See* JA361–62. The jury found the circumstances sufficiently aggravating and imposed a sentence of death, which the Supreme Court of Pennsylvania affirmed on direct appeal. *See* JA371.

Mr. Johnson then began his collateral attacks. During the pendency of his third petition under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. C.S. §§ 9541 *et seq.*, he came into possession of a letter and five police reports allegedly impeaching the trial testimony of third-party witness George Robles. *See* JA64 at ¶¶30, 31. Mr. Johnson amended his third PCRA petition to assert that the Commonwealth's failure to disclose those materials violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

On July 6, 2015, the Court of Common Pleas of Berks County granted the third amended PCRA petition, vacated the convictions, and awarded a new trial. *See* JA507. The Honorable Scott D. Keller opined that "the credibility of Mr. Robles may not have been so sufficiently

4

damaged as to cause the jury to return an opposite verdict," but ultimately concluded that the undisclosed evidence "could have been used to impeach Mr. Robles at trial" and therefore should have been produced during the prosecution. JA510–11. The Supreme Court of Pennsylvania later affirmed in a divided decision. *See* JA513.

*"Johnson II"*

On July 14, 1998, a separate Berks County jury convicted Mr. Johnson of first-degree murder for the death of José Martinez. *See* JA490–93. The Berks County Court of Common Pleas sentenced him to life imprisonment, and the Superior Court of Pennsylvania affirmed the judgment of conviction on direct appeal. *See id.*; JA372.

After unsuccessfully seeking collateral relief under the Commonwealth's PCRA, Mr. Johnson petitioned for a writ of habeas corpus in the Eastern District of Pennsylvania. *See* JA434. Among other claims, he alleged that the Commonwealth withheld impeachment evidence relating to trial witnesses George Robles, his then-paramour Luz Cintron, and Mr. Johnson's estranged paramour Mylta Velazquez. *See* JA493. The habeas court denied relief, but this Court reversed and directed an evaluation on remand of both the individual and cumulative

materiality of the undisclosed evidence. *See* JA498–99. But that analysis never occurred. Rather than litigate due process materiality on remand, respondents withdrew their opposition to the petition, and the habeas court issued an uncontested writ. *See* JA539.

*Consolidation and the Double Jeopardy Opinion*

Both *Johnson I* and *II* were eventually remanded to the Court of Common Pleas of Berks County. *See* JA541. Mr. Johnson then moved in both cases to dismiss the informations under the Double Jeopardy Clause of the Pennsylvania Constitution. The cases were consolidated before the Honorable Eleni V. Dimitriou Geishauser, who granted the motions on October 29, 2020. *See* JA573. She concluded that Pennsylvania's Double Jeopardy Clause barred a second prosecution in both cases given District Attorney Baldwin's handling of evidence favorable to Mr. Johnson. *See* JA567–72. As a result, both criminal prosecutions came to an end.

*Civil Action*

Mr. Johnson now seeks civil recovery for circumstances attendant to his criminal prosecutions. *See* JA57. Invoking the Civil Rights Act of 1871, he alleges that former City of Reading Detectives Angel Cabrera

and Bruce Dietrich, and DA Baldwin are individually liable for failing to produce favorable evidence, fabricating evidence, and conspiring to secure his convictions in violation of the Fourteenth Amendment's guarantee of due process. *See* JA118–39, JA149. He also claims that the County of Berks and the City of Reading are separately liable for maintaining policies, customs, or failures to train and supervise that caused the alleged constitutional violations.[1] *See* JA89–118.

The claims against DA Baldwin did not survive the pleadings. The District Court dismissed all claims against him with prejudice after concluding that the conduct alleged was quasi-judicial in nature, and therefore protected by absolute immunity. *See* Order, ECF 58; Mem. Op., ECF 57. All of the federal claims survived.

The litigation then proceeded through extensive discovery and cross-motions for summary judgment. During that period, Mr. Johnson was represented by three successive litigation teams comprising a total of eight attorneys. He commenced the action through the law firm of

---

[1] Mr. Johnson does not challenge on appeal the disposition of his pendent claims under Pennsylvania law, nor the failure-to-intervene claim against Edward D. Ratajack, in his capacity as Executor of the Estate of Berks County Detective Joseph Stajkowski. *See* JA139–48.

Marino Associates, who litigated the pleadings and a portion of discovery before withdrawing. *See* ECF Nos. 1, 97–98. Attorney Justin C. Bonus thereafter assumed representation, completed discovery, and filed Mr. Johnson's own motion for partial summary judgment on the municipal liability claims, together with his opposition to the cross-motions. *See* ECF Nos. 70, 121–22, 133–36, 142, 148–49. After briefing closed but before the District Court ruled, Attorney Bonus also withdrew. *See* ECF Nos. 151, 154. In April 2025, Mr. Johnson retained a third litigation team drawn from three separate law offices—Duane Morris LLP, John Pierce Law P.C., and the Law Offices of Barry M. Wax—which entered appearances and submitted a supplemental opposition to summary judgment by leave of the District Court. *See* ECF Nos. 156–61, 168–72.

At summary judgment, Mr. Johnson confined his theory of municipal liability to a single-incident claim that Berks County was deliberately indifferent by failing to train prosecutors and law enforcement regarding their disclosure obligations. His own motion relied exclusively on the County's alleged failure to implement disclosure training, written policies, supervision, and production protocols. *See* Johnson MSJ, ECF 121-1 at 5–9.

The litigation strategy became more apparent from Mr. Johnson's opposition to the County's cross-motion. In his first opposition, Mr. Johnson argued that the District Attorney's Office lacked written disclosure policies, training, supervision, and procedures for obtaining favorable evidence from law enforcement, and that those omissions created an obvious risk of recurring constitutional violations. *See* Johnson Opp'n, ECF 134 at 10–14. In his supplemental opposition, Mr. Johnson doubled down on the same single-incident theory, asserting that the County acted with deliberate indifference by failing to implement adequate disclosure training, production protocols, supervisory measures, and other safeguards necessary to prevent recurring constitutional violations. *See* Johnson Supp. Opp'n, ECF 169 at 2–9. Mr. Johnson did argue that he had "presented sufficient evidence demonstrating a triable issue of a pattern of constitutional violations," but he relegated that assertion to a footnote and failed to cite any evidence to substantiate his claim.[2] *Id.* at 9 n.3.

---

[2] In a notable shift in position, Mr. Johnson's supplemental brief also requested that his own motion for summary judgment be denied. *See* Johnson Supp. Opp'n, ECF 169 at 2 n.1.

The District Court resolved the cross-motions for summary judgment by Order dated December 12, 2025. *See* JA4–5. It denied Mr. Johnson's motion and granted the cross-motion filed on behalf of Berks County, concluding that the record failed to establish either prerequisite for municipal liability. *Id.* First, Mr. Johnson failed to prove an underlying constitutional violation. *See* JA16–17. Second, "[e]ven if [he] had demonstrated an underlying violation," Mr. Johnson "failed to produce any evidence" that the County maintained a policy, custom, or deliberately indifferent failure to train or supervise concerning the disclosure of favorable evidence. JA17–18. Accordingly, the District Court entered judgment in favor of the County.[3]

Mr. Johnson now timely appeals. *See* JA1.

---

[3] The municipal liability claim against the City of Reading, and the individual liability claims failed as well. *See* JA4–5. Detectives Cabrera and Dietrich received qualified immunity on the nondisclosure claim because, between 1996 and 1998, no clearly established law imposed upon police officers a constitutional duty to disclose favorable evidence to prosecutors. *See* JA19–21 (citing *Gibson v. Superintendent of N.J. Dep't of Law & Public Safety-Div. of State Police*, 411 F.3d 427 (3d Cir. 2005)). The fabrication and conspiracy claims also lacked evidentiary support, including proof that either detective fabricated evidence, coerced witnesses, acted in bad faith, or joined any agreement to violate Mr. Johnson's rights. *See* JA21–26. With no viable claim remaining, the District Court entered judgment and closed the case. *See* JA32–36.

## SUMMARY OF THE COUNTERARGUMENT

Two independent reasons warrant affirmance of the District Court's December 12, 2025, Order granting summary judgment.

*First*, Mr. Johnson's appellate theories—that prior post-conviction rulings precluded the District Court from independently determining whether a constitutional violation occurred, that DA Baldwin possessed final policymaking authority over discovery practices, and that his nondisclosure itself constituted County policy under the single-decision doctrine—were never presented below and are therefore forfeited.

*Second*, the only theory he did litigate fails on the merits. He sought to impose municipal liability based on the alleged absence of adequate disclosure policies, training, supervision, and procedures, but identified no pattern of similar violations sufficient to establish deliberate indifference, and the Supreme Court has foreclosed single-incident liability based on an alleged failure to train prosecutors regarding their disclosure obligations.

The District Court correctly entered summary judgment in favor of Berks County, and its Order should therefore be AFFIRMED.

11

**COUNTERARGUMENT**

**I.    The Court should affirm the December 12, 2025, Order granting summary judgment in favor of Berks County.**

Summary judgment determinations are subject to plenary review. *See Panzarella v. Navient Sols., Inc.*, 37 F.4th 867, 872 (3d Cir. 2022).[4] Therefore, this Court independently applies the governing legal standard and "may affirm on any basis supported by the record, even if it departs from the District Court's rationale." *Id.*

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Material facts are those which "might affect the outcome of the suit under the governing law," and a dispute over such facts is genuine if "a fair-minded jury could return a verdict for the [nonmovant] on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252 (1986). "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

---

[4]    Unless otherwise indicated, parentheticals identifying internal quotation marks, alterations, ellipses, citations, emphasis, and other internal modifications have been omitted to improve readability.

Summary judgment proceeds under a burden-shifting framework. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Once the movant establishes their entitlement to judgment as a matter of law on the undisputed material facts of record, the burden then shifts to the nonmovant, who "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* at 587 (citing FED. R. CIV. P. 56(e)). That burden demands more than "the mere existence of *some* alleged factual dispute," and evidence that "is merely colorable, or is not significantly probative," will not do. *Anderson*, 477 U.S. at 547, 252 (emphasis in original). In the end, a nonmovant who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" cannot withstand summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)). That is precisely the circumstances presented here.

Mr. Johnson cannot manufacture reversible error by repackaging his own evidentiary failures and litigation strategy as flaws in the District Court's analysis. Nevertheless, he claims the District Court erred by concluding that no underlying constitutional violation occurred,

13

by failing to recognize DA Baldwin as the final policymaker for discovery practices, and by failing to treat DA Baldwin's alleged withholding of favorable evidence as official County policy under the single-decision doctrine. *See* Opening Brief at 27–42. He is mistaken.

### A. The arguments Mr. Johnson advances on appeal were never presented to the District Court and are therefore forfeited.

Arguments raised for the first time on appeal "face serious obstacles" to merits review. *Stanley v. City of Sanford, Fla.*, 145 S. Ct. 2058, 2071 (2025). Mr. Johnson presents three novel arguments: (1) that the legal conclusions made in his post-conviction proceedings necessarily "preclude" the District Court from assessing whether the record here establishes a constitutional violation, Opening Brief at 27–29; (2) that DA Baldwin possessed final policymaking authority over discovery practices, *id.* at 29–34; and (3) that DA Baldwin's failure to disclose favorable evidence constituted official County policy under the single-decision doctrine, *id.* at 39–42. But this Court "may of course determine that under its usual rules of waiver or forfeiture, it will not consider those arguments." *Stanley*, 145 S. Ct. at 2071.

Mr. Johnson did not preserve the arguments he advances on appeal. "[O]ur adversary system is designed around the premise that the parties

know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief." *Greenlaw v. United States*, 554 U.S. 237, 244 (2008). That obligation reflects the "desirability and existence of a general practice under which appellate courts confine themselves to the issues raised below[.]" *Hormel v. Helvering*, 312 U.S. 552, 558 (1941). Parties are therefore bound by "the rule that points not argued will not be considered[.]" *Margolin v. Nat'l Ass'n of Immigr. Judges*, 146 S. Ct. 1285, 1288 (2026).

This Court is equally clear. "[O]nce parties choose their arguments, they may only pursue those arguments." *Barna v. Bd. of Sch. Dirs. of the Panther Valley Sch. Dist.*, 877 F.3d 136, 146 (3d Cir. 2017). Parties may certainly "place greater emphasis" or "more fully explain" an argument on appeal, but they "are precluded" from advancing new legal theories. *Dennis v. City of Philadelphia*, 19 F.4th 279, 287 (3d Cir. 2021). Thus, "arguments raised for the first time on appeal are not properly preserved for appellate review," and even inadvertent forfeiture warrants review only in "truly exceptional circumstances." *Simko v. United States Steel Corp.*, 992 F.3d 198, 205 (3d Cir. 2021).

The summary judgment record here leaves no doubt about the theory Mr. Johnson chose to litigate. He confined his claim against Berks County to a single-incident failure-to-train theory of deliberate indifference. His own motion argued only that the County failed to provide disclosure training, adopt written policies, supervise prosecutors and law enforcement, and implement production protocols. *See* Johnson MSJ, ECF 121-1 at 5–9. His first opposition to the cross-motion repeated those alleged omissions. *See* Johnson Opp'n, ECF 134 at 10–14. His supplemental opposition did the same, asserting that the absence of training, protocols, supervision, and safeguards made recurring violations predictable. *See* Johnson Supp. Opp'n, ECF 169 at 2–9. Those submissions never argued the existence of a constitutional violation, invoked preclusion, established DA Baldwin's final policymaking authority under state law, or relied on the single-decision doctrine. *See* ECF Nos. 134, 169. That explains why Mr. Johnson's Opening Brief failed to identify "the specific pages of the appendix or place in the proceedings at which each issue on appeal was raised, objected to, and ruled upon." 3d Cir. L.A.R. 28.1(a)(1) (2011).

Those omissions are consequential. Each new theory requires a distinct legal inquiry and potentially different evidence. Preclusion turns on the law of the state in which the relevant judgment was rendered. *See Univ. of Tennessee v. Elliott,* 478 U.S. 788, 796 (1986) (citing 28 U.S.C. § 1738). Final policymaker status is a question of state law focused on the official's authority over the particular subject matter at issue. *See McMillian v. Monroe Cnty., Ala.,* 520 U.S. 781, 784–85 (1997). And single-decision liability requires proof that a deliberate choice by an official possessing final policymaking authority itself represented municipal policy. *See City of St. Louis v. Praprotnik,* 485 U.S. 112, 123 (1988). Mr. Johnson's summary judgment briefing addressed none of those requirements.

Most telling is Mr. Johnson's silence. Although he now submits the District Court's conclusion concerning the existence of a due process violation "is very difficult—if not impossible—to make any sense of," he never argued below that the summary judgment record established an underlying constitutional violation. Opening Brief at 27–29. Indeed, apart from failing to argue that estoppel precluded the District Court from deciding that issue, Mr. Johnson never undertook the "material

prejudice" analysis required to establish his due process claims. *Dennis v. Sec'y, Pennsylvania Dep't of Corrs.*, 834 F.3d 263, 309 (3d Cir. 2016) (*en banc*). Nor does he do so now. There is not a single discrete or cumulative analysis of whether "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* Rather than argue that the summary judgment record meets that standard, he instead relies exclusively on the legal determinations reached in his post-conviction proceedings—a distinct legal theory he never presented to the District Court.

Passing references to DA Baldwin as a "policymaker" or to an alleged "policy" or "custom" are not enough to enable meaningful appellate review. Preservation requires that a party "unequivocally put its position before the trial court...in a manner that permits the court to consider its merits," rather than mention the issue only "in passing[.]" *Garza v. Citigroup Inc.*, 881 F.3d 277, 284 (3d Cir. 2018). Mr. Johnson never asked the District Court to determine whether a constitutional violation occurred, whether the legal determinations made in his post-conviction proceedings bound the County in this civil action, whether Pennsylvania law vested DA Baldwin with final policymaking authority

over the conduct at issue, whether his actions constituted official County policy, or even to take judicial notice of the post-conviction opinions on which he now relies. *See* Johnson MSJ, ECF 121-1 at 5–9; Johnson Opp'n, ECF 134 at 10–14; Johnson Supp. Opp'n, ECF 169 at 2–9. He never identified the legal standards governing those questions or marshal record evidence directed to them. His briefing instead treated DA Baldwin's alleged policymaking status only as a means of attributing the asserted failures in training, supervision, and procedure to the County.[5]

That is not merely a more refined presentation of the same argument. There is no question that Mr. Johnson may refine on appeal arguments presented to the District Court, but he may not introduce a materially different theory requiring a distinct legal framework. *See Dennis*, 19 F.4th at 287. Yet his appellate arguments do exactly that. *See* Opening Brief at 27–42. For example, Mr. Johnson's invocation of the single-decision doctrine comes for the first time on appeal. *See*

---

[5] Mr. Johnson never analyzed whether DA Baldwin qualified as a final policymaker because he deemed the issue *"self-evident."* Johnson Reply, ECF 149 at 1 n.1 (emphasis in original). Consistent with that view, he confined his argument to a single sentence: "Here, Mark Baldwin was the official policymaker." Johnson Opp'n, ECF 134 at 10.

Opening Brief at 39–42 (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986)). None of his summary judgment filings discussed that doctrine, much less argued that it precluded the entry of summary judgment. *See* Johnson MSJ, ECF 121-1 at 5–9; Johnson Opp'n, ECF 134 at 10–14; Johnson Supp. Opp'n, ECF 169 at 2–9. And even if he had merely cited authority touching on the doctrine, "simply citing a case in the District Court is not sufficient to raise all arguments that might flow from it." *United States v. Dupree*, 617 F.3d 724, 731 (3d Cir. 2010); *accord United States v. Payo*, 135 F.4th 99, 108 (3d Cir. 2025) ("[A]n unexplained citation to a case, without more, is not enough[.]"). Because he never presented those arguments in a manner that allowed the District Court to consider their merits, they are at least forfeited if not waived.

Nor has Mr. Johnson identified a reason to excuse his forfeiture. *See Simko*, 992 F.3d at 206. "Departure from the established preservation rule is a narrow exception to the general bar on such review," and appropriate only under "truly exceptional circumstances" where "the public interest requires that the issues be heard or when a manifest injustice would result from the failure to consider the new issues." *Barna*, 877 F.3d at 147.

Nothing of that kind is present here.  Mr. Johnson was represented by successive teams of counsel, filed his own summary judgment motion, opposed the County's cross-motion, and obtained leave to submit supplemental briefing.  He nevertheless chose to litigate a single-incident failure-to-train theory rather than the preclusion, final-policymaker, and single-decision theories he now advances.  Mr. Johnson is now bound by those strategic choices.  *See Barna*, 877 F.3d at 146 (observing the preservation doctrine "promote[s] finality by encouraging parties to advance all relevant arguments and by binding counsel to their strategic choices"); *Link v. Wabash R. Co.*, 370 U.S. 626, 633 (1962) (concluding that "each party is deemed bound by the acts of his lawyer-agent" because he "voluntarily chose this attorney" and "cannot now avoid the consequences of the acts or omissions of this freely selected agent").  Enforcing ordinary preservation rules under those circumstances creates no manifest injustice—it simply holds Mr. Johnson to the litigation choices he made below.  The newly raised arguments are forfeited and therefore "need not be addressed" by the Court.  *Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993).  Thus, it should AFFIRM.

**B. The District Court correctly rejected the only theory of municipal liability Mr. Johnson actually litigated.**

The forfeiture discussed above resolves the new theories Mr. Johnson advances on appeal. But it does not end the inquiry. The separate question is whether the District Court correctly decided the only theory of liability Mr. Johnson pursued. It did.

Mr. Johnson's theory was straightforward. He maintained that the District Attorney's Office had no sufficiently detailed written disclosure policy, provided no formal disclosure training to prosecutors or local law enforcement, and lacked procedures designed to ensure that favorable evidence reached criminal defendants. *See* Johnson MSJ, ECF 121-1 at 5–9; Johnson Opp'n, ECF 134 at 10–14. His expert similarly criticized the absence of "manuals, written policies and practice, appropriate training and other protocols," and opined that those institutional deficiencies made constitutional violations likely. *See* Johnson MSJ, ECF 121-1 at 6–7. On that record, Mr. Johnson contended that Berks County had been deliberately indifferent to the constitutional rights of criminal defendants as evidence by his own prosecutions.

Berks County joined issue on precisely that claim.  It demonstrated that the District Attorney was already governed by legal and professional obligations requiring disclosure of favorable evidence and prohibiting the concealment or fabrication of evidence.  *See* Berks MSJ, ECF 123 at 12–14 (citing PA ST RPC Nos. 3.3(a)(1), (3), 3.4(a)–(b), (d), 3.5(a)).  And because Mr. Johnson identified no pattern of prior similar constitutional violations, and the record lacked evidence of any, Berks County explained that his theory necessarily depended upon the narrow "single-incident" form of deliberate indifference.  *See* Berks Reply, ECF 145 at 2–3.  That theory fails because "single-incident liability does not, as a legal matter, encompass failure to train prosecutors in their [disclosure] obligation." *Connick v. Thompson*, 563 U.S. 51, 68 (2011).

That rule is dispositive here.  Deliberate indifference liability based on a single-incident of inadequate training is intentionally demanding because a municipality is liable only for its own conscious choice, not merely for the constitutional tort of an employee.  *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989).  Thus, a plaintiff must ordinarily identify "[a] pattern of similar constitutional violations by untrained employees" sufficient to place municipal decisionmakers on notice that

23

existing training is inadequate. *Connick*, 563 U.S. at 62. Without that notice, policymakers "can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.*

Mr. Johnson identified no such pattern. He pointed to no prior prosecution involving a comparable disclosure violation, no history of prosecutors mishandling favorable evidence, no prior complaints alerting County policymakers to a deficiency, and no evidence that similar violations had occurred with sufficient frequency to make additional training necessary. *See* Johnson MSJ, ECF 121-1 at 5–9; Johnson Opp'n, ECF 134 at 10–14; Johnson Supp. Opp'n, ECF 169 at 2–9. His evidence concerned his own prosecutions. That is insufficient to establish the notice required for a pattern theory of deliberate indifference. *Cf. Connick*, 563 U.S. at 62–63 (holding that four dissimilar disclosure violations did not establish the requisite pattern).

Mr. Johnson cannot cure that deficiency by asserting that the need for additional disclosure training was so "obvious" as to excuse the absence of a pattern. The Supreme Court rejected that precise argument in *Connick*, where it explained that prosecutors are licensed attorneys who receive legal training, remain subject to professional discipline, and

"are ethically bound to know what *Brady* entails and to perform legal research when they are uncertain." 563 U.S. at 64–66 (citing *Brady v. Maryland*, 373 U.S. 83 (1963)). For that reason, "[a] licensed attorney making legal judgments, in his capacity as a prosecutor, about *Brady* material simply does not present the same highly predictable constitutional danger as *Canton*'s untrained officer." *Id.* at 67. Municipalities are therefore "entitled to rely on prosecutors' professional training and ethical obligations in the absence of specific reason, such as a pattern of violations[.]" *Id.* at 66. Mr. Johnson thus presented precisely the claim *Connick* forecloses: a failure-to-train theory based on nondisclosure during his own prosecutions, without the pattern of prior similar violations necessary to establish deliberate indifference.

Mr. Johnson's appellate arguments therefore identify no error in the judgment under review. They ask this Court to reverse because the District Court did not analyze theories of municipal liability that he never presented during summary judgment. That is not reversible error. The District Court correctly resolved the theory Mr. Johnson actually litigated, and its judgment should be AFFIRMED.

25

## CONCLUSION

This appeal fails at both the threshold and on the merits of the claim Mr. Johnson actually litigated.  The preclusion, final policymaker, and single-decision theories he now advances were never presented to the District Court and are forfeited.  And the deliberate indifference theory he did present fails because the record contains no pattern of similar violations, no notice that existing safeguards were inadequate, and no basis to treat the absence of additional disclosure training as the kind of obvious deficiency that can support single-incident liability.  The District Court's conclusions are sound.  The December 12, 2025, Order granting summary judgment should therefore be AFFIRMED.

Respectfully Submitted,

BY: _____
JOSHUA W. BROWNLIE
MARSHALL DENNEHEY, P.C.
2000 Market Street, Suite 2300
Philadelphia, PA 19103
(215) 575-2816
JWBrownlie@mdwcg.com

*Attorney for Appellees County of Berks and Edward D. Ratajack*

Date: August 10, 2026

# CERTIFICATIONS

I, Joshua W. Brownlie, certify that I am a member of the bar of this Court; that, pursuant to Local Rule 31.1(c), the electronic Brief is identical to the paper copies and has been scanned for viruses with none detected; that the Brief complies with Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 4940 words, excluding the portions exempted by Appellate Rule 32(f); that it complies with Appellate Rules 32(a)(5) and (6) because it was prepared in Microsoft Word using 14-point Century Schoolbook typeface; and that a true and correct copy has been served on all counsel of record through the electronic filing system.

Respectfully Submitted,

**MARSHALL DENNEHEY, P.C.,**

BY: _____
     JOSHUA W. BROWNLIE
     2000 Market Street, Suite 2300
     Philadelphia, PA 19103
     (215) 575-2816
     JWBrownlie@mdwcg.com

*Attorney for Appellees County of Berks*
*and Edward D. Ratajack*

Date: August 10, 2026