# United States Court of Appeals
*for the*
# Third Circuit

Case No. 26-1033

RODERICK JOHNSON,

*Appellant,*

– v. –

CITY OF READING; ANGEL CABRERA; COUNTY OF BERKS; MARK C. BALDWIN; EDWARD D. RATAJACK, EXECUTOR OF THE ESTATE OF STAJKOWSKI; EILEEN K. CARDILE, as personal representative of the estate of Bruce H. Dietrich.

ON APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA IN NO. 5:21-CV-04860, HONORABLE JOHN M. GALLAGHER, U.S. DISTRICT JUDGE

**BRIEF FOR APPELLEES CITY OF READING, ANGEL CABRERA AND EILEEN K. CARDILE, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF BRUCE H. DIETRICH**

DAVID J. MACMAIN, ESQ.
BRIAN C. CONLEY, ESQ.
MACMAIN LEINHAUSER
*Attorney for Appellees City of Reading, Angel Cabrera and Eileen K. Cardile, as personal representative of the Estate of Bruce H. Dietrich*
433 West Market Street, Suite 200
West Chester, Pennsylvania 19382
(484) 318-7106

COUNSEL PRESS
A Proceed Service
The Appellate Experts®
(800) 4-APPEAL • (394683)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ iii

IDENTIFICATION OF THE PARTIES ........ 1

COUNTER STATEMENT OF JURISDICTION ........ 3

COUNTER STATEMENT OF THE ISSUES ON APPEAL ........ 4

COUNTER STATEMENT OF THE CASE ........ 5

Criminal History ........ 5

"Johnson I" – The Banks Murders ........ 5

"Johnson II" – The Martinez Murder ........ 8

Post-Conviction Collateral Attacks ........ 10

Civil History ........ 12

STANDARD OF REVIEW ........ 15

SUMMARY OF THE COUNTERARGUMENT ........ 17

A. The District Court Properly Granted Summary Judgment on the *Brady* Claim ........ 18

B. The District Court Properly Granted Summary Judgment on the *Monell* Claim ........ 19

C. The District Court Properly Granted Summary Judgment on the Fabrication of Evidence Claim ........ 19

D. Johnson Waives his Conspiracy and Punitive Damages Claims ........ 20

COUNTER ARGUMENT ........ 21

I. The District Court Properly Granted Summary Judgment in Favor of Detectives Cabrera and Dietrich on Johnson's Fourteenth Amendment Fair Trial ("*Brady*") Claim ........ 21

A. The duty of law enforcement officers under *Brady* was not clearly established until This Court's decision in *Gibson* in 2005 ........ 22

i. Johnson has waived the issue of qualified immunity ....................................................................24

ii. The District Court's interpretation of *Gibson* should be affirmed ........................................................25

B. Arguments concerning post-2005 conduct are forfeited and lack evidence ....................................................................29

II. The District Court Properly Granted Summary Judgment to Reading on the *Monell* Claim..........................................................33

A. There is no underlying violation ...............................................35

B. The failure to train theory fails ................................................37

III. The District Court Properly Granted Summary Judgment on the Fabrication of Evidence Claims ...................................................41

IV. Johnson Waives His Conspiracy and Punitive Damages Claims...........................................................................................47

CONCLUSION ..............................................................................................49

## TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Alvarado v. City of Philadelphia*,
2026 U.S. App. LEXIS 21286 (3d Cir., July 17, 2026) ....................................40

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ....................................................................................15

*Ashcroft v. al-Kidd*,
563 U.S. 731 (2011) ................................................................................28-29

*Bd. of Cnty. Comm'rs of Bryan Cty. v. Brown,*
520 U.S. 397 (1997) ......................................................................34, 35, 37

*Bell v. City of Philadelphia*,
275 Fed. App'x 157 (3d Cir. 2008) ..............................................................30

*Black v. Montgomery Cnty.*,
835 F.3d 358 (3d Cir. 2016) .........................................................................42

*Blanyar v. Genova Prods. Inc.*,
861 F.3d 426 (3d Cir. 2007) .........................................................................25

*Bonenberger v. Plymouth Township*,
132 F.3d 20 (3d Cir. 1997) ...........................................................................38

*Boseman v. Upper Providence Twp.*,
680 F.App'x 65 (3d Cir. 2017) ......................................................................42

*Brady v. Maryland,*
373 U.S. 83 (1963) .............................................................................*passim*

*Brennan v. Norton*,
350 F.3d 399 (3d Cir. 2003) .........................................................................48

*Canton v. Harris,*
489 U.S. 378 (1989) ...........................................................................*passim*

*Carswell v. Borough of Homestead*,
381 F.3d 235 (3d Cir. 2004) .........................................................................34

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ................................................................................15, 16

*City of Los Angeles v. Heller*,
475 U.S. 796 (1986) .......... 35, 36, 38

*Connick v. Thompson*,
563 U.S. 51 (2011) .......... 35, 38, 39, 41

*Dalton v. Little Lion*,
2021 U.S. Dist. LEXIS 67100 (E.D. Pa., Apr. 6, 2021).......... 46

*Erdman v. Nationwide Ins. Co.*,
582 F.3d 500 (3d Cir. 2009) .......... 25

*F.D.I.C. v. Deglau*,
207 F.3d 153 (3d Cir. 2000) .......... 33, 47

*Fry v. Smoker et. al.*,
2012 U.S. Dist. LEXIS 64939 (E.D. Pa. May 9, 2012) .......... 34

*Garza v. Citigroup Inc.*,
881 F.3d 277 (3d Cir. 2018) .......... 30

*Gibson v. Superintendent of N.J. Dep't of Law & Public Safety-Div. of State Police*,
411 F.3d 427 (3d Cir. 2005) .......... *passim*

*Gilyard v. Dusak*,
Civ. A. No. 16-2986, 2018 WL 2144183 .......... 23

*Giuliani v. Springfield Twp.,*
238 F. Supp. 3d 670 (E.D. Pa. 2017),
*aff'd*, 726 F. App'x 118 (3d Cir. 2018) .......... 45

*Halsey v. Pfeiffer*,
750 F.3d 273 (3d Cir. 2014) .......... 42, 43

*Hamilton v. Leavy*,
117 F.3d 742 (3d Cir. 1997) .......... 40

*Handy v. City of Philadelphia*,
No. 24-1905, 2024 U.S. Dist. LEXIS 174173 (E.D. Pa., Sept. 26, 2024) .......... 23

*Hernandez v. Borough of Palisades Park Police Dep't.*,
58 F. App'x 909 (3d Cir. 2003) .......... 16

*Hicks v. City of Philadelphia*,
783 F.Supp. 3d 834 (E.D. Pa. 2025) .......... 23-24, 27

*Hightower v. City of Philadelphia*,
130 F.4th 352 (3d Cir. 2025) ....................................................................39

*In re Niaspan Antitrust Litigation*,
67 F.4th 118 (3d Cir. 2023) .................................................................. 29-30

*Institute for Scientific Info., Inc. v. Gordon & Breach, Science Publishers, Inc.*,
931 F.2d 1002 (3d Cir. 1991) ..................................................................47

*Jaludi v. Citigroup*,
933 F.3d 246 (3d Cir. 2019) ....................................................................30

*Johnson v. City of Philadelphia*,
975 F.3d 394 (3d Cir. 2020) .............................................................. 37, 38

*Kiriakidis v. Borough of Vintondale*,
609 F. App'x 713 (3d Cir. 2015) ........................................................ 35-36

*Kost v. Kozakiewicz*,
1 F.3d 176 (3d Cir. 1993) ........................................................................47

*Kyles v. Whitley*,
514 U.S. 419 (1995) ......................................................... 25, 26, 27, 28

*Lewis v. City of Phila.*,
Civ. A. No. 19-2847, 2020 WL 1683451 ....................................................23

*Maldonado v. Ramirez*,
757 F.2d 48 (3d Cir. 1985) ......................................................................46

*Mallory v. Simon & Schuster, Inc.*,
728 Fed. Appx. 132 (3d Cir. 2018) ..........................................................25

*Miller v. City of Philadelphia*,
162 F.4th 88 (3d Cir. 2025) ......................................................................40

*Monell v. Dep't of Soc. Servs. of City of New York*,
436 U.S. 658 (1978) ........................................................................ *passim*

*Montgomery v. DeSimone,*
159 F.3d 120 (3d Cir.1998) .............................................................. 35, 38

*Moore v. Temple Univ.*,
674 Fed. Appx. 239 (3d Cir. 2017) ..........................................................15

*Murray v. IBEW Local Union No. 98 Pension Plan*,
2011 U.S. Dist. LEXIS 53284 (E.D. Pa., May 17, 2011) ...........................45

*Ogrod v. City of Phila.*,
598 F. Supp. 3d 253 (E.D. Pa. 2022)....................23

*Outlaw v. City of Phila.*,
Civ. A. No. 21-1290, 2021 WL 3471168....................23

*Parker v. School District of Philadelphia*,
823 Fed. Appx. 68 (3d Cir. 2020).................... 32, 46

*Razak v. Uber Techs, Inc.*,
951 F.3d 137 (3d Cir. 2020).................... 32, 46

*Simmons v. City of Philadelphia*,
947 F.2d 1042 (3d Cir. 1991)....................47

*Smith v. City of Allentown*,
589 F.3d 684 (3d Cir. 2009).................... 45, 46

*Smith v. Holtz*,
210 F.3d 186 (3d Cir. 2000)....................22

*Spady v. Bethlehem Area Sch. Dist.*,
800 F.3d 633 (3d Cir. 2015)....................29

*State Auto Prop. & Cas. Ins. Co. v. Pro. Desing, P.C.*,
566 F.3d 86 (3d Cir. 2009)....................15

*Stokes v. City of Phila.*,
No. 22-0338, 2023 U.S. Dist. LEXIS 10751 (E.D. Pa. Jan. 23, 2023)....................24

*Swainson v. City of Philadelphia*,
2023 U.S. Dist. LEXIS 4402 (E.D. Pa., Jan. 10, 2023)....................24

*Thomas v. City of Phila.*,
290 F. Supp. 3d 371 (E.D. Pa. 2018).................... 24, 28

*Thomas v. Cumberland County*,
749 F.3d 217 (3d Cir. 2014).................... 36, 39, 40

*Vargas v. City of Philadelphia*,
783 F.3d 962 (3d Cir. 2015)....................34

*Walker v. City of Phila.*,
No. 25-5002, 2026 U.S. Dist. LEXIS 152108 (E.D. Pa. July 9, 2026)....................24

*Woloszyn v. County of Lawrence*,
2005 U.S. App. LEXIS 1417 (3d Cir. Jan. 28, 2005)....................34

**Statutes & Other Authorities:**

U.S. Const., Amend. VIII ........ 40

U.S. Const., Amend. XIV ........ *passim*

28 U.S.C. § 1291 ........ 3

28 U.S.C. § 1331 ........ 3

28 U.S.C. § 1367(a) ........ 3

28 U.S.C. § 2107(a) ........ 3

42 U.S.C. § 1983 ........ *passim*

F.R.E. 801(c) ........ 45

F.R.E. 805 ........ 45

Fed. R. Civ. P. 15(b)(2) ........ 30

Fed. R. Civ. P. 56(c) ........ 15

Fed. R. Civ. P. 56(c)(2) ........ 45

## IDENTIFICATION OF THE PARTIES

Appellant / Plaintiff Roderick Johnson ("Johnson") is a formerly incarcerated individual who was separately convicted of (1) the December 8, 1996 shooting deaths of Damon and Gregory Banks ("Banks Murders") on November 25, 1997 and (2) the November 1, 1996 shooting death of Jose Martinez ("Martinez Murder") on July 14, 1998. Both cases were prosecuted by the Berks County District Attorney's Office and tried before separate juries in Berks County, Pennsylvania. Both convictions were vacated on October 29, 2020 due to misconduct of the prosecuting District Attorney, Mark Baldwin.

Appellee / Defendant, City of Reading ("Reading"), is a municipal entity in the Commonwealth of Pennsylvania that employed Detectives Angel Cabrera and Bruce Dietrich.

Appellee / Defendant, Angel Cabrera ("Detective Cabrera"), is a retired detective with the City of Reading Police Department who was employed as a detective during the investigations and trials of the Banks Murders and Martinez Murder.

Appellee / Defendant, Eileen Cardile, is the personal representative of the Estate of Bruce Dietrich ("Detective Dietrich"), deceased, who was employed as a detective with the City of Reading Police Department during the investigations and trials of the Banks Murders and Martinez Murder.

Together, Reading, Detective Cabrera, and Detective Dietrich are collectively referred to as the "Reading Appellees."

Appellee / Defendant, the County of Berks ("Berks"), is a government entity in Pennsylvania in which Johnson was tried and convicted of the Banks Murders and Martinez Murder.

Appellee / Defendant, Edward Ratajack, is the Executor of the Estate of Berks County Detective Joseph Stajkowski ("Detective Stajkowski").

Together, the Berks and Detective Stajkowski are referred to as the "Berks Defendants."

Former Defendant, District Attorney Mark Baldwin ("DA Baldwin"), was the District Attorney who tried Johnson to conviction in the Banks Murders and Martinez Murder trials, and was found to have committed violations of *Brady v. Maryland* for failing to disclose evidence favorable to the accused in each trial. All claims against DA Baldwin were dismissed with prejudice by this Court on February 6, 2023 (JA38). Johnson has not appealed the dismissal of DA Baldwin.

## <u>COUNTER STATEMENT OF JURISDICTION</u>

This is a civil rights action brought pursuant to 42 U.S.C. § 1983, over which the District Court had subject matter jurisdiction pursuant to 28 U.S.C. §1331 and supplemental jurisdiction over the pendent claims asserted under Pennsylvania law because those torts form part of the same controversy as the federal causes of action under 28 U.S.C. §1367(a).

This appeal is from a final order, over which This Court has jurisdiction by virtue of 28 U.S.C. § 1291. On December 12, 2025, the District Court entered an Order and Memorandum Opinion granting Summary Judgment in favor of all of the Defendants on all remaining claims on December 12, 2025, which constitutes a final decision. Johnson filed a notice of appeal on January 7, 2026, thus the appeal is timely. *See* 28 U.S.C. § 2107(a); *accord* JA48 at ECF Nos. 174–75.

## COUNTER STATEMENT OF THE ISSUES ON APPEAL

1. Whether the district court properly granted summary judgment to Appellees Cabrera and Dietrich on qualified immunity grounds with respect to Appellant's Fourteenth Amendment fair-trial (*Brady*) claim?

   **Suggested Answer: Yes.**

2. Whether the district court properly granted summary judgment to Reading on Appellant's *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) claims?

   **Suggested Answer: Yes.**

3. Whether the district court properly granted summary judgment to Appellees Cabrera and Dietrich on Appellant's fabrication-of-evidence claims?

   **Suggested Answer: Yes.**

4. Whether Johnson waived appeal to the claims for conspiracy and punitive damages?

   **Suggested Answer: Yes.**

## COUNTER STATEMENT OF THE CASE

Johnson's underlying claims stem from his allegations that the prosecution violated his civil rights in connection with the investigations into the Banks Murders and the Martinez Murder, and his separate trials and convictions for each. More than twenty years later, Johnson obtained collateral relief from the Berks County Court of Common Pleas, vacating his convictions due the prosecutorial misconduct of DA Baldwin for failing to disclose impeachment evidence favorable to the accused. The Berks County Court of Common Pleas precluded further prosecution under the Double Jeopardy Clause of the Pennsylvania Constitution. The majority of the post-conviction proceedings are not relevant to the issues before the District Court nor relevant to the issues presented in this appeal. Accordingly, the Reading Appellees focus only upon the history necessary and relevant to resolving the issues presented on appeal.

### Criminal History

#### *"Johnson I" – The Banks Murders*

On November 25, 1997, Plaintiff was convicted of two counts of first-degree murder for the shooting deaths of Damon Banks and Gregory Banks ("Banks Murders"), in the matter captioned as *Commonwealth v. Roderick Johnson*, Court of Common Pleas of Berks County, Docket No. CP-06-CR-000118-1997. (Notice of Removal with Complaint Included, ¶ 14 (JA 62); Defendants, City of Reading

and Angel Cabrera's Answer to Plaintiff's Complaint with Affirmative Defenses [ECF No. 65], ¶ 13 (JA 178)). The Banks Murders criminal trial for Roderick Johnson began on November 18, 1997. (*See* the Notes of Testimony of the Trial in the Matter of *Commonwealth v. Roderick Johnson*, Court of Common Pleas of Berks County, Docket No. CP-06-CR-000118-1997 ("Banks Murder Trial Transcript"), *Pennsylvania v. Johnson*, Dkt No. CP-06-CR-118-1997 (Pa. Ct. Com. Pl. Berks Cnty. Nov. 18-19, 1997) (JA 308-320).

On December 8, 1996, Damon Banks and Gregory Banks were found dead by Exeter Township Police Officers on a gravel driveway leading to a silt basin in Exeter Township, Pennsylvania. (*See* the December 19, 2017 Opinion of the Pennsylvania Supreme Court, p. 3 (JA515); *see also* the Exeter Township Police Report regarding the December 8, 1996 incident (JA 257-263)). The Banks Murders were investigated by Exeter Township Police Department. (Vega Dep., p. 21-22) (JA689-JA690). Later on the same date, Roderick Johnson was found wounded near a local business less than five miles from the silt basin. (*See* December 19, 2017 Opinion of the Pennsylvania Supreme Court, p. 3 (JA5152); *see also* the Exeter Township Police Reports (JA259-262)).

On December 11, 1996, Johnson was interviewed by Exeter Police at Reading Hospital. (*See* Exeter Township Police Department Supplemental Report dated December 8, 1996) (JA264-267). Johnson admitted that he was present when

Damon and Gregory Banks were murdered. (*Id*.). Shawnfatee Bridges was also present when Damon and Gregory Banks were murdered. (*See* the Guilty Plea and Sentencing Hearing Transcript in the matter of *Commonwealth of Pennsylvania v. Shawnfatee Michael Bridges*, CCP Berks County, No. CP-06-CR-117-1997, p. 9-11; 68-70) (JA522-538). According to Mr. Bridges, Plaintiff Roderick Johnson shot and killed Damon and Gregory Banks. (*Id*., p. 10-11) (JA531-532).

Non-party Detective Vega, a detective with the Reading Police Department, provided limited information to the Exeter Township Police Department in the investigation of the Banks Murders. (Vega Dep., p. 21-22) (JA689-JA690). Detective Vega informed the Exeter Police Department that Roderick Johnson was also a target in an investigation that Detective Vega was conducting regarding a homicide. (Vega Dep., p. 22) (JA690).

Detective Cabrera had limited participation in Exeter Township's investigation of the Banks Murders. (Cabrera Dep., p. 75) (JA650). Specifically, Detective Cabrera witnessed a statement provided by George Robles on December 17, 1996 related to the Banks Murders. (Cabrera Dep., p. 75-76 (JA650-651); *see also* the December 17, 1996 Statement by George Robles (JA 268-270)). The statement was taken by Detective Bruce Dietrich and witnessed by Detective Cabrera. (Cabrera Dep., p. 76) (JA651).

According to Robles' statement, Roderick Johnson admitted to Robles that he and Shawnfatee Bridges "murdered the two Banks boys." (*See* December 17, 1996 Statement by George Robles) (JA268-270). Robles testified at the trial of Roderick Johnson for the murders of Damon and Gregory Banks. (*See* the Banks Murder Trial Transcript, p. 3) (JA10). Robles testified to the following at the trial: "Roderick Johnson told me that…he, Richard Morales and Shawnfatee Bridges picked the Banks boys up and murdered them." (*See* the Banks Murder Trial Transcript, p. 512) (JA330). Robles further testified that Roderick Johnson told him that Johnson had a .38 caliber gun and "after he was shot…he dumped it somewhere." (*Id.*).

Neither Detective Cabrera nor Detective Dietrich testified in the Banks Murder trial. (*See* Banks Murder Trial Transcript, p. 1-5) (JA308-312).

***"Johnson II" – The Martinez Murder***

On July 14, 1998, Plaintiff was convicted of first-degree murder for the November 1, 1996 shooting death of Jose Martinez ("Martinez Murder"), in the matter captioned as *Commonwealth v. Roderick Johnson*, Court of Common Pleas of Berks County, Docket No. CP-06-CR-0001537-1997. (Complaint, ¶ 106 (JA77); Reading Answer, ¶ 106 (JA189-190)).

The Martinez Murder criminal trial for Roderick Johnson began on July 8, 1998. (*See* the Notes of Testimony of the Trial in the Matter of *Commonwealth v.*

*Roderick Johnson*, Court of Common Pleas of Berks County, Docket No. CP-06-CR-0001537-1997 ("Martinez Murder Trial Transcript") (JA331-356)).

On November 1, 1996, Reading Police responded to a call reporting a gunshot victim. (*See* the Martinez Murder Trial Transcript, Testimony of Officer Mark Hafner, p. 27-29) (JA384-386). Detective Vega was the lead investigator and affiant in the Martinez Murder. (Vega Dep., p. 19) (JA688); *see also* the Criminal Complaint in the matter of *Commonwealth of Pennsylvania v. Roderick Johnson*, No. 1537-97) (JA279-283).

Although Detective Cabrera provided "information to Investigator Vega," he was "not involved in the investigation" regarding the Martinez Murder. (Cabrera Dep., p. 70) (JA646). Regarding his involvement, Detective Cabrera testified that during a meeting with criminal investigators regarding the Martinez Murder, Vega "told us that they had a homicide" and asked the investigators if "anyone knows of a person named Roddy." (Cabrera Dep., p. 72) (JA647). Detective Cabrera responded that he did and provided Vega with a packet of information regarding a "shooting investigation at the 600 block of Bingaman Street" in which he had identified information regarding Roderick Johnson. (Cabrera Dep., p. 72-73) (JA647-648). Detective Cabrera gave the information to Detective Vega and advised that "they call him Roddy." (Cabrera Dep., 73-74) (JA 648-649).

Detectives Cabrera and Deitrich took a statement from George Robles regarding the Martinez Murder on December 17, 1996. (Cabrera Dep., 106) (JA653); *see* also the December 17, 1996 Statement of George Robles (JA271-JA274). Consistent with his trial testimony, George Robles told Detectives Dietrich and Cabrera that Roderick Johnson confessed to him that he was the person who shot Jose Martinez on November 1, 1996 on the 300 block of Schuylkill Avenue. (*Id*. at JA271).

***Post-Conviction Collateral Attacks***

While Johnson's third petition for post-conviction relief was pending in the *Johnson I* matter, Johnson came into possession of a letter and five police reports that allegedly impeached the credibility of witness George Robles. (JA64-65 at ¶¶ 30, 31). As a result, Johnson amended his petition to assert that the Commonwealth failed to disclose exculpatory or impeachment evidence in violation of Fourteenth Amendment. Ultimately, on July 6, 2015, the Honorable Scott D. Keller of the Court of Common Pleas of Berks County granted the third amended Post-Conviction Relief Act ("PCRA") petition, opining that DA Baldwin knew of the undisclosed evidence prior to trial (JA567), and it should have been produced during the prosecution because it "could have been used to impeach Mr. Robles," even though his credibility may not have been so damaged "as to cause the jury to

return an opposite verdict." JA510-11. The Pennsylvania Supreme Court later affirmed.

In *Johnson II*, Johnson unsuccessfully sought relief under the PCRA and ultimately petitioned for a writ of habeas corpus in the United States District Court for the Eastern District of Pennsylvania, alleging, among other claims, that the Commonwealth withheld impeachment evidence relating to witness George Robles and his current and former girlfriends, Luz Cintron and Mylta Velazquez. (JA434; JA493). The Eastern District denied the petition, but, on appeal, this Court reversed and directed that the materiality of the evidence be evaluated on remand. (JA498-99). In response, the opposition to the petition was withdrawn and the Eastern District issued an uncontested writ. (JA539).

After *Johnson I* and *Johnson II* were remanded to the Court of Common Pleas of Berks County, Johnson moved to have both cases dismissed on double jeopardy grounds. (JA541). The cases were consolidated and on October 29, 2020, Plaintiff's Motion to Dismiss Information on Double Jeopardy Grounds was granted by the Berks County Court of Common Pleas, Judge Elleni Dimitriou Geishauser. (JA573). Judge Geishauser found that DA Baldwin's handling of the evidence favorable to Johnson barred further prosecution under the Double Jeopardy Clause of the Pennsylvania Constitution. (JA567; JA571; JA573).

## <u>Civil History</u>

Johnson filed the instant litigation on September 24, 2021 in the Court of Common Pleas of Berks County, seeking damages related to his prosecution and conviction, and made a host of claims against various parties involved – or in the case of the Reading Appellees, tangentially involved – in his prosecution. (JA57-155). Specifically, he claims that Detectives Cabrera and Dietrich and DA Baldwin violated his due process rights under the Fourteenth Amendment by allegedly failing to produce impeachment evidence, fabricating evidence, and conspiring to obtain a conviction. JA118-39; JA149. He further alleges that Reading and Berks County are liable under *Monell v. Department of Social Services* and its progeny for maintaining policies, customs or deficient training that allegedly caused the claimed violations. JA89-118.

After it was removed on November 4, 2021 (JA 33), the matter proceeded through an extensive period of discovery, culminating in the parties filing cross-motions for summary judgment, those of the Defendants being granted and those of Johnson being denied. Throughout the litigation, Johnson was represented by three different law firms and no less than eight total attorneys. Through his second litigation team, Attorney Justin Bonus, Johnson filed affirmative Motions for Summary Judgment and responded to those Motions for Summary Judgment filed by the Reading Appellees and Berks County. *See* ECF Nos. 70 (JA39), 121-22,

133-36, 142, and 148-49 (JA44-46). At the time of Attorney Bonus's withdrawal as counsel for Johnson on January 15, 2025 (ECF Nos. 151, 154 (JA46)), the summary judgment motions of all parties were fully briefed, with the parties having briefed their affirmative motions, responded to cross-motions, and filed reply briefs to each. *See*, e.g., ECF Nos. 121-24, 127-31, 133-36, 140-43, 145, and 148-49 (JA44-46).

Johnson thereafter obtained new counsel (ECF Nos. 156-64 (JA47)), through which he requested and was granted leave to file supplemental briefing on the pending summary judgment motions (ECF No. 168 (JA47-48)). Johnson thereafter filed supplemental oppositions to the pending summary judgment motions of Berks County and the Reading Appellees (ECF Nos. 169-70 (JA48)) to which Berks County and the Reading Appellees filed Replies (ECF Nos. 171-72 (JA48)).

At summary judgment, Johnson's theory of liability against the Reading Appellees related only to conduct during the investigation of the *Johnson I* and *Johnson II* murders, the prosecution and trial; i.e. through 1998 at the latest. (ECF No. 121-1, p. 7; *see also* JA792-94; JA797; *see also* ECF No. 172, p. 4 and ECF No. 173, p. 16, n. 6). In fact, during discovery, Johnson only inquired about pre-2005 conduct. *See*, generally, the deposition of Charles Broad (JA792-JA794; JA797), the deposition of Det. Cabrera (JA625-32; JA634-35; JA640-45; JA657-58), the deposition of DA Baldwin (JA591-618), and the deposition of Gerardo

Vega (JA678-88; JA691-732). However, in his Supplemental Brief, after the close of discovery and without any factual support, Johnson, for the first time, sought to expand the scope of his claims and *speculated* that the Reading Appellees may have failed to disclose exculpatory or impeachment evidence after Johnson's convictions and after 2005. (ECF No. 169; see also ECF 172, p. 3-5; ECF 173, p. 16, n. 3)).

On December 12, 2025, the District Court resolved the cross-motions for summary judgment, denying Johnson's motion and granting the motion filed by the Reading Appellees and dismissing all of Johnson's claims. JA4-5. The District Court found that Johnson failed to establish his *Monell* claims, failed to establish and underlying constitutional violation by any of Reading's employees or agents, failed to establish that Reading had a policy, practice, or failure of training that caused a constitutional violation, failed to establish any evidence that Cabrera or Dietrich fabricated evidence, and found that there was no clearly established duty on law enforcement officers before 2005 to disclose exculpatory or impeachment – i.e. *Brady* – evidence, entitling them to qualified immunity. JA13-24. The District Court further dismissed the conspiracy and punitive damages claims. JA24-26; JA28.

Johnson now timely appeals.

## STANDARD OF REVIEW

The Court exercises a plenary standard of review and applies the same standard as the District Court to determine whether summary judgment was appropriate. *Moore v. Temple Univ.*, 674 Fed. Appx. 239, 241 (3d Cir. 2017); *see State Auto Prop. & Cas. Ins. Co. v. Pro. Desing, P.C.*, 566 F.3d 86, 89 (3d Cir. 2009).

Summary judgment should be entered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material when it affects the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists when the evidence requires a fact finder to resolve the parties' differing versions of the truth at trial. *Id.* at 249. Accordingly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48 (emphasis in original).

The standard for ruling on a motion for summary judgment as articulated by the Supreme Court in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) is as follows:

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and

> upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial.

*Id.* "[I]t is proper for a district court to grant summary judgment when a plaintiff fails to produce any evidence on a necessary element of h[is] claim." *Hernandez v. Borough of Palisades Park Police Dep't.*, 58 F. App'x 909, 912 (3rd Cir. 2003) (citing *Celotex*, 477 U.S. at 323-25). The plaintiff "need not try her case by carrying the burden of persuasion, but she must, at a minimum, produce evidence on every element of her claim." *Hernandez*, 58 F. App'x at 912. Thus, the burden on the party moving for summary judgment is not to show the "absence of a genuine issue of material fact," but rather to show "that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325.

The Reading Appellees submit that the District Court properly held that there was no genuine issue of material fact and correctly granted summary judgment in their favor.

## **SUMMARY OF THE COUNTERARGUMENT**

Johnson's appeal is based upon three fundamental faults that preclude relief and require affirmance of the District Court's Order and Opinion granting summary judgment to Reading, Det. Cabrera, and Det. Dietrich. First, Johnson's argument regarding liability for a *Brady* violation, which is also the sole theory upon which Johnson bases his appeal to the dismissal of his *Monell* claim, is premised upon a fundamental misunderstanding of when it became clearly established that law enforcement officers could be liable under § 1983 for failure to disclose impeachment evidence to the prosecutor. That duty became clearly established in the Third Circuit in 2005, seven (7) years after his convictions.

Second, Johnson's appellate arguments are based upon speculation, misinterpretation of the record, and mischaracterizations of relevant law in an attempt to conjure evidentiary and legal support on appeal for his *Brady* and Fabrication of Evidence claims, for which he failed to meet his burden of proof on summary judgment.

Third, in trying to concoct support for his claims against the Reading Appellees, Johnson improperly imposes the actions of County DA Baldwin onto the Reading Appellees. This sleight of hand – evidenced by Johnson's careful refusal to reference who (DA Baldwin, and not anyone affiliated with Reading) was found to have violated *Brady* during the post-conviction and criminal appellate

proceedings following Johnson's convictions – can only be construed as an attempt to mislead This Court and must be rejected.

### A. The District Court Properly Granted Summary Judgment on the *Brady* Claim

In *Gibson v. Superintendent*, 411 F.3d 427 (3d Cir. 2005), This Court first held that law enforcement officers had a duty to disclose impeachment and exculpatory evidence to the prosecutor. Prior to 2005, as This Court stated in *Gibson*, such a right was not clearly established, and, at most, it was only assumed that police officers had an affirmative duty to disclose such information to the prosecutor. The District Court properly applied This Court's holding and found that because Cabrera's and Dietrich's alleged failures to turn over the five police reports from 1996 and 1997 referencing George Robles, one of the Commonwealth's witness in the Banks Murders and Martinez Murder, and the February 28, 1997 letter drafted by Robles occurred prior to 2005, it was not established, let alone clearly so, that they had an affirmative duty to disclose the information to the prosecutor. Accordingly, the District Court properly granted qualified immunity to Cabrera and Dietrich and dismissed the *Brady* claims. On appeal, Johnson disregards this caselaw and instead relies on his own interpretations of the very Supreme Court precedent that This Court interpreted in Gibson to reach its holding. Johnson's specious interpretations should be disregarded.

### B. The District Court Properly Granted Summary Judgment on the *Monell* Claim

In granting summary judgment to Reading on the *Monell* claim, the District Court properly found that (1) there was no underlying violation, and (2) no evidence of a policy, practice, or failure to train that caused the underlying violation. Johnson's argument on appeal is limited to a single-incident failure to train theory that cannot be sustained because, at the time of the relevant conduct, there it was not established law enforcement officers had a duty under *Brady*. As a result, the City cannot be said to be deliberately indifferent to the rights of individuals with whom the police might come into contact, when there could be no underlying violation in the first place. Johnson's attempt to apply DA Baldwin's *Brady* violation to the City is anathema to *Monell* and its progeny, which requires, as a prerequisite to liability, that one of the municipality's actors commits a *Brady* violation. Johnson's theory – that a violation of an individual unaffiliated with the municipality can serve as the basis for a *Monell* claim – is non-sensical, unworkable, and must be rejected.

### C. The District Court Properly Granted Summary Judgment on the Fabrication of Evidence Claim

The District Court properly found that Johnson failed to present any evidence to support a fabrication claim against Cabrera or Dietrich, entitling them to summary judgment. Johnson's arguments on appeal are premised on the same

mischaracterizations of the record that he relied upon before the District Court. Rather than point to evidence that Cabrera and Dietrich presented evidence that they knew to be false, Johnson only offers, at most, evidence that the evidence may have been disputed – which is not enough to satisfy the high bar for such a claim.

### D. Johnson Waives his Conspiracy and Punitive Damages Claims

In arguing that the District Court erred in dismissing the punitive damages claim when it found that the record was devoid of evidence that Cabrera and Dietrich disregarded Johnson's rights and acted with malice in doing so, Johnson makes no substantive argument and instead summarily refers to 10 pages of his Brief. Accordingly, he has waived this argument. Regarding conspiracy, which the District Court dismissed, Johnson fails to raise any argument whatsoever, waiving the claim on appeal.

## COUNTER ARGUMENT

The District Court properly granted summary judgment in favor of Detectives Cabrera and Dietrich as to Johnson's constitutional claims for failure to disclose impeachment evidence under *Brady* and its progeny, the fabrication of evidence claim, the conspiracy claim, and the punitive damages claim. Moreover, even if found to have violated *Brady*, Detectives Cabrera and Dietrich are nevertheless entitled to qualified immunity on the *Brady* claim.

Additionally, the District Court properly granted summary judgment in favor of Reading as to Johnson's *Monell* claim. There was no underling violation by a municipal actor, nor did Johnson come forward with any evidence of a policy or custom to "withhold *Brady* and *Giglio* material," a failure to train, or evidence that Reading was deliberately indifferent to a need for more or better training.

Finally, the District Court properly granted summary judgment on the conspiracy and punitive damages claims, to which Johnson either omits entirely from his Brief (conspiracy) or fails to meaningfully address (punitive damages), thus resulting in waiver of these issues.

### I. The District Court Properly Granted Summary Judgment in Favor of Detectives Cabrera and Dietrich on Johnson's Fourteenth Amendment Fair Trial ("*Brady*") Claim

Faced with (1) clear precedent that entitles to Detectives Cabrera and Dietrich to qualified immunity on the *Brady* violation claims (Counts IV and V),

(2) no preserved claim for post-*Gibson* conduct, and, regardless (3) no evidence of post-2005 conduct by Cabrera and Dietrich, Johnson resorts to distortions of case law, including This Court's own precedent, and an argument that he forfeited by raising it for the first time in his supplemental brief filed more than six (6) months after the parties filed their summary judgment motions. (ECF 169 (JA43-48). These tactics are unavailing and This Court should affirm summary judgment on Counts IV and V.

### A. The duty of law enforcement officers under *Brady* was not clearly established until This Court's decision in *Gibson* in 2005.

As the District Court correctly found, This Honorable Court's decision in *Gibson v. Superintendent of N.J. Dep't of Law & Public Safety-Div. of State Police*, 411 F.3d 427 (3d Cir. 2005) "is determinative" (JA20) of the *Brady* claim. In *Gibson*, the Third Circuit held that "police officers and other state actors may be liable under § 1983 for failing to disclose exculpatory information to the prosecutor." *Id*. at 433. In doing so, This Court was careful to recognize that the right was not clearly established in 1994 – when the underlying conduct in that case occurred – nor even in 2000, when the Third Circuit, in *Smith v. Holtz*, 210 F.3d 186, 197 n. 14 (3d Cir. 2000), only could "assume" that police officers had an affirmative duty "to disclose exculpatory evidence to the accused, if only by informing the prosecutor that the evidence exists." *Gibson*, 411 F.3d at 444, quoting *Holtz*, 210 F.3d at 197 n. 14. Accordingly, This Court, in *Gibson*, clearly

established that while the duty to disclose impeachment information to the accused "lies solely with the prosecutor" (*Gibson*, 411 F.3d at 442), law enforcement officers had a duty to disclose impeachment information to the prosecutor. *Id*. at 433.

As the District Court noted, its ruling is not an outlier and it cited to multiple other district courts reaching the same conclusion. (JA21). Specifically, the District Court referred to the following cases that similarly held that the duty on law enforcement officers was not clearly established until *Gibson*: *Ogrod v. City of Phila.*, 598 F. Supp. 3d 253, 267-68 (E.D. Pa. 2022) ("duty under the due process clause and *Brady* to disclose exculpatory evidence was not clearly established in 1996 when [the plaintiff] was convicted of [victim's] murder."); *Outlaw v. City of Phila*., Civ. A. No. 21-1290, 2021 WL 3471168, at *5-6 (concluding that law was not "clearly established" until This Court's decision in *Gibson*); *Gilyard v. Dusak*, Civ. A. No. 16-2986, 2018 WL 2144183, at *5 (finding that the right was not clearly established for an alleged 1998 violation); *Lewis v. City of Phila.*, Civ. A. No. 19-2847, 2020 WL 1683451, at *10 (finding that the right was not "clearly established" for an alleged 1997 violation).

The consensus is not limited to those cases cited by the District Court. *See also Handy v. City of Philadelphia*, No. 24-1905, 2024 U.S.Dist.LEXIS 174173 at *10 (E.D.Pa., Sept. 26, 2024); *Hicks v. City of Philadelphia*, 783 F.Supp. 3d 834

(E.D.Pa. 2025) (the right was not clearly established until *Gibson* was decided in 2005); *Swainson v. City of Philadelphia*, 2023 U.S.Dist.LEXIS 4402 *10 (E.D.Pa., Jan. 10, 2023) (the applicability to police officers of the duty to disclose under *Brady* was not clearly established until 2005, citing *Gibson*); *Stokes v. City of Phila.*, No. 22-0338, 2023 U.S. Dist. LEXIS 10751, at *12 (E.D. Pa. Jan. 23, 2023) ("though under current precedent, police officers 'may be liable under § 1983 for failure to disclose exculpatory information to the prosecutor . . . this constitutional obligation on the part of law enforcement officers was not recognized by the Third Circuit until *Gibson* in 2005'") (internal citations omitted); *Walker v. City of Phila.*, No. 25-5002, 2026 U.S. Dist. LEXIS 152108, at *19 (E.D. Pa. July 9, 2026) ("While the Third Circuit in *Gibson* recognized that police officers could be liable under § 1983 for failing to turn over evidence to the prosecutor in a criminal proceeding, the Circuit explained that such a right has not previously been clearly established"); *see Thomas v. City of Phila.*, 290 F. Supp. 3d 371, 386 (E.D. Pa. 2018) ("If anything, the passage demonstrates that *Gibson* extended the holding of *Kyles* — from knowledge of evidence imputed to the *prosecutor*, to a 'related' obligation on the part of the *officer*.")

*i. Johnson has waived the issue of qualified immunity.*

Faced with this clear precedent, Johnson now inconsistently argues that *Gibson* is irrelevant because, in his reading, the Supreme Court clearly established

the duty in *Kyles v. Whitley* ten years earlier. 514 U.S. 419 (1995). *See* Johnson Brief at p. 47. This argument is at odds with Johnson's argument in his Supplemental Brief on summary judgment wherein Johnson admitted that the Reading Appellees "are correct that under *Gibson*…, Cabrera and Dietrich may have been entitled to qualified immunity…". (*See* ECF 169, p. 14). Accordingly, Johnson has conceded Cabrera and Dietrich's entitlement to qualified immunity and his instant argument to the contrary is waived. *See Mallory v. Simon & Schuster, Inc.*, 728 Fed.Appx. 132, 135 (3d Cir. 2018) (issue conceded on summary judgment is waived on appeal); *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 507 n.2 (3d Cir. 2009) (holding that plaintiff waived argument on appeal by conceding the point at issue in district court); *Blanyar v. Genova Prods. Inc.*, 861 F.3d 426, 431 n.6 (3d Cir. 2007) (same). Accordingly, Johnson has waived any argument that Cabrera and Dietrich are not entitled to qualified immunity.

*ii. The District Court's interpretation of Gibson should be affirmed.*

Out of an abundance of caution, however, the entitlement to qualified immunity will nevertheless be addressed substantively herein. Even if not waived, which the Reading Appellees deny, Johnson's instant argument, in which Johnson takes considerable interpretive license, requires This Court to conclude that it essentially rendered an advisory opinion in *Gibson*, and a plain reading of *Kyles* and *Gibson* reveals that the argument is fallacious.

In *Kyles*, the Supreme Court clarified its holding in *Brady v. Maryland*, holding that the "individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police," squarely placing the burden of obtaining and disclosing any exculpatory information on the prosecutor rather than police officers. *Kyles*, 514 U.S. at 437. While the Supreme Court recognized that police investigators sometime fail to inform prosecutors of all they know, it nevertheless held that *prosecutors alone* carried this burden since they have the means to ensure that all relevant information is disclosed. *Id*. at 438. In fact, the Supreme Court was careful to limit its holding to prosecutors because otherwise, it would improperly substitute police officers into the role of the prosecutor regarding the government's *Brady* obligations. *Id*.

The procedural posture of *Kyles* is also relevant to demonstrate the fallacy of Johnson's position. *Kyles* is not a § 1983 case, but rather a petition for habeas corpus. *Id*. at 422. The issue in *Kyles* did not involve duties of police investigators at all, but solely whether information was "material" under the *Brady* analysis and the prosecutor's duty to learn of all favorable evidence to the accused because only the prosecutor is equipped to determine materiality. *Id*. at 437-438. Ignoring this background, Johnson merely concludes that "*Kyles* had clearly established that law enforcement officers violate the Constitution by knowingly withholding *Brady*

material from prosecutors." Johnson Brief at p. 47, *citing Kyles* at 437-38. However, Johnson's citation to Kyles simply does not stand for this proposition. Nowhere in the pages cited does the Supreme Court reach the holding – or anything close to it – that Johnson brazenly ascribes to those pages. Johnson's argument must be rejected for this reason alone.

This Court's analysis in *Gibson* further demonstrates that the Supreme Court did not reach the holding in *Kyles* that Johnson wishes it reached. In *Gibson*, This Court was careful to address and differentiate the holding in *Kyles*, which This Court found only address the prosecutor's duty to learn of evidence favorable to the accused "known to others acting on the government's behalf in the case, including the police." *Gibson*, 411 F.3d at 443-44. The District Court, in rejecting the same argument raised by Johnson at summary judgment, noted This Court's differentiation between the duty of the prosecutor (i.e. "evidence in the hands of the police could be imputed to the prosecutor" because of the prosecutors duty to learn of it) (*Gibson*, 431 F.3d at 443) and the "related duty of the police disclose information to the prosecutor" (*Id*. at 444). (JA20, n. 4). Other District Courts in this Circuit have similarly noted This Court's differentiation of *Kyles*. *See*, *e.g.*, *Hicks v. City of Philadelphia*, 783 F.Supp.3d at 848 (noting *Gibson's* analysis in differentiating *Kyles* and stating the "Third Circuit in *Gibson* did not approach the question before it – whether police could be liable under § 1983 for violating the

*Brady* mandate – as if the answer was a given" but rather addressed the purpose of *Brady*, considered the decisions of its sister circuits and established that police officers could be liable under *Brady*); *see also Thomas v. City of Philadelphia*, 290 F. Supp. 3d. at 386 (noting *Gibson's* interpretation of *Kyles* and holding that "[i]f anything, the passage [in which *Gibson* analyzed *Kyles*] demonstrates that *Gibson* extended the holding of *Kyles* — from knowledge of evidence imputed to the *prosecutor*, to a 'related' obligation on the part of the *officer*.")

Accordingly, Johnson's argument is erroneous and the District Court's holding that the duty on police to disclose evidence favorable to the accused to the prosecutor was not clearly established until *Gibson* was decided in 2005 should be affirmed.

Even if This Court were to reinterpret its decision in *Gibson*, Cabrera and Dietrich are nevertheless entitled to qualified immunity. As is clear from the consensus of case law interpreting *Gibson* consistently with the District Court below, which are cited herein above, any reexamination of *Gibson* would not change the qualified immunity analysis. Given that many District Courts have found that there was no pre-*Gibson* duty on police officers in this Circuit to disclose evidence favorable to the accused to the prosecutor, it cannot be said that "every reasonable [police officer] would have understood" that failing to disclose such information to the prosecutor violates the constitution. *Ashcroft v. al-Kidd*,

563 U.S. 731, 741 (2011). This Court has similarly held that when several district courts in this Circuit have faced the same scenario and reached differing conclusions, such diverse decisions demonstrate "there is no vigorous consensus of authority." *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 640 n. 7 (3d Cir. 2015). Accordingly, no clarification or modification of *Gibson* would alter the District Court's correct holding that Dietrich and Cabrera are entitled to qualified immunity.

### B. Arguments concerning post-2005 conduct are forfeited and lack evidence.

While much of Johnson's brief is devoted to argument that Cabrera and Dietrich are not entitled to qualified immunity for post-2005 conduct, the argument is forfeited. The first time that Johnson raised any argument concerning liability for events following 2005 (and specifically the *Gibson* decision) was not in Johnson's Complaint, not in his affirmative motion for summary judgment, nor even in his opposition to summary judgment or reply briefs, but rather in a supplemental brief filed more than six months after summary judgment motions were due, and only after Johnson's third legal team had entered the fray. The argument was specifically raised in support of Johnson's *Monell* claim, a claim for which he sought affirmative summary judgment. (*See*, *e.g.*, ECF 121; ECF 121-1, ECF 169, p. 14; *see also* JA21, n 6). It is well established that arguments raised for the first time before a district court in a reply brief are deemed forfeited. *In re Niaspan Antitrust*

*Litigation*, 67 F.4th 118, 135 (3d Cir. 2023) (*citing Jaludi v. Citigroup*, 933 F.3d 246, 256 n.11 (3d Cir. 2019) ("Because Citigroup failed to invoke the provision until its reply brief in the District Court, we deem this argument [forfeited]")). "To preserve a matter for appellate review, a party 'must unequivocally put its position before the trial court at a point and in a manner that permits the court to consider its merits.'" *Garza v. Citigroup Inc.*, 881 F.3d 277, 284 (3d Cir. 2018) (citation omitted). Forfeiture is particularly required when the argument is not purely a legal question, but concerning the sufficiency of evidence. *In re Niaspan*, 67 F.4th at 135-36.

Here, Johnson first raised this issue in his supplemental brief on summary judgment, after he had already laid out all of his arguments in his prior briefing. The issue of post-2005 conduct would necessarily require facts in support, none of which were developed or presented by Johnson in discovery or in summary judgment. Accordingly, the issue is forfeited.

Similarly, the issue also must be forfeited because it is well established that a party cannot amend his pleadings through briefing. *Bell v. City of Philadelphia*, 275 Fed. App'x 157, 160 (3d Cir. 2008) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment"). It also cannot be said that post-2005 conduct was tried by the consent of the parties. *See* Fed. R. Civ. P. 15(b)(2) (permitting claims not raised to be tried by

consent). At no point in the litigation before the District Court did Johnson, who had multiple firms and attorneys representing him, ever raise, seek discovery on, or otherwise seek the express consent of the parties to try the issue of post-2005 conduct. To the contrary, the record reflects that at all times analysis of Cabrera and Dietrich's conduct was limited to the time between the *Johnson I* and *Johnson II* murders, and Johnson's criminal convictions, the latter of which was in 1998. For example, in deposing (retired ) Chief Charles R. Broad as a Rule 30(b)(6) designee on behalf of Reading, Johnson's counsel only inquired about policies, practices, and discipline during the years 1993 through 1998 (JA792-94; JA797); in deposing Angel Cabrera, counsel did not inquire about any post-2005 conduct (*see*, generally, JA625-32; JA634-35; JA640-45; JA657-58); in deposing (former) DA Mark Baldwin, counsel did not inquire into any post-2005 conduct of the City Defendants (*see*, generally, JA591-618); and in deposing Gerardo Vega, counsel did not inquire about any post-2005 conduct of the Reading Appellees (*see*, generally, JA678-88; JA691-732).

Accordingly, post-2005 conduct, and Johnson's arguments on appeal concerning the same, are forfeited and cannot be considered.

Even if they could be considered, Johnson has offered no factual support for any conduct by the Reading Appellees that occurred after *Gibson* was decided in 2005. Johnson's argument on appeal is essentially a carbon copy of that which was

raised in his supplemental brief. The District Court correctly held that regardless of the lateness of the argument, Johnson nevertheless failed to support it with facts. (JA21, n.6). Of course, the absence of any facts makes sense because Johnson never pursued the issue previously and took no discovery on it. Regardless, Johnson's identical argument here fails for the same reason: there are no facts. While Johnson tries to paper over this omission with vague references to the procedural history following Johnson's convictions, none of those references contain any facts about conduct by Cabrera or Dietrich. Johnson conspicuously fails to even mention Cabrera or Dietrich in his Brief concerning this issue, underscoring the lack of evidence.

If Johnson makes this argument seeking to invite speculation regarding what conduct Cabrera or Dietrich took post-2005, it must similarly be rejected because speculation cannot support his claims. *Parker v. School District of Philadelphia*, 823 Fed.Appx. 68, 72-73 (3d Cir. 2020) (holding that "summary judgment cannot be defeated by speculation and conjecture" and that allegations raised for the first time in summary judgment briefing with no support in the record are insufficient to defeat summary judgment); *Razak v. Uber Techs, Inc.*, 951 F.3d 137, 144 (3d Cir. 2020) (explaining that a party opposing summary judgment cannot rely on speculation and conclusory allegations).

For the foregoing reasons, the District Court's grant of qualified immunity to Cabrera and Dietrich should be affirmed.

## II. The District Court Properly Granted Summary Judgment to Reading on the *Monell* Claim.

The District Court's Order granting summary judgment to Reading on Johnson's municipal liability claim under *Monell* should be affirmed because it correctly determined that there was (1) no underlying violation and, regardless, (2) no facts to support the claim.

Notably, Johnson limits his *Monell* claim concerning Reading to the sole issue of an alleged failure "to train its police officers to disclose impeachment evidence." Accordingly, any *Monell* claims related to policy, practices, customs, and/or alleged failure to train regarding issues other than the disclosure of impeachment evidence are waived and will not be addressed by the Reading Appellees. *See F.D.I.C. v. Deglau*, 207 F.3d 153, 169-70 (3d Cir. 2000) (issues not raised in an opening brief are waived on appeal).

A municipal entity cannot be held vicariously liable for the actions of its employees. *Monell v. New York City Dept. of Social Servs,* 436 U.S. 658, 691 (1978); *Canton v. Harris,* 489 U.S. 378, 392 (1989). A municipality may only be liable under 42 U.S.C. § 1983 if the governmental body itself subjects a person to a deprivation of rights or "causes" a person to be subjected to such deprivation. *Monell*, 436 U.S. at 658. "[I]n order to establish liability under Section 1983

against a local government unit *or a supervisory official*, a plaintiff must demonstrate: (1) the deprivation of a constitutional right; (2) that the action was taken pursuant to a custom or policy of the local government unit; and (3) that the action was the cause of the deprivation." *Fry v. Smoker et. al.*, 2012 U.S. Dist. LEXIS 64939, *8 (E.D. Pa. May 9, 2012) (emphasis added) (Schiller, J.) (citing *Monell*, 436 U.S. at 691).

Failure to properly train employees can create a custom or policy for purposes of Section 1983 liability, if such failure is tantamount to "deliberate indifference to the constitutional rights of person with whom the police come in contact." *Canton,* 489 U.S. at 388. Thus, "not all failures or lapses in training will support liability under § 1983." *Woloszyn v. County of Lawrence*, 2005 U.S. App. LEXIS 1417, *1 at *27-*28 (3d Cir. Jan. 28, 2005). To establish deliberate indifference, Plaintiff must show "a pattern of underlying constitutional violations." *Carswell v. Borough of Homestead*, 381 F.3d 235, 234 (3d Cir. 2004). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Vargas v. City of Philadelphia*, 783 F.3d 962, 974 (3d Cir. 2015) (citing *Bryan,* 520 U.S. at 410).

Further, where a failure to train is alleged based on a single incident, the plaintiff must demonstrate that policymakers "kn[e]w to a moral certainty" that the alleged constitutional deprivation would occur and the need for further training

"must have been plainly obvious." *Canton*, 489 U.S. at 390, n. 10. This theory of liability is possible only "in a narrow range of circumstances." *Connick v. Thompson*, 563 U.S. 51, 63 (2011) (quoting *Bryan*, 520 U.S. at 409); *see also Montgomery v. DeSimone,* 159 F.3d 120, 127 (3d Cir.1998) (finding that mere allegations that an officer was not trained are not sufficient to state a claim).

**A. <u>There is no underlying violation.</u>**

As the District Court correctly concluded, there was no underlying violation by any employee of the City of Reading, which is fatal to Johnson's *Monell* claim. As set forth above at length, and as correctly decided by the District Court, Cabrera and Dietrich are entitled to qualified immunity and, therefore, there is no underlying violation.

Johnson, in his Opening Brief, fails to argue that Cabrera and/or Dietrich committed an underlying violation. Instead, Johnson argues that the District Court erred in granting summary judgment by ignoring a *Brady* violation committed by DA Baldwin. The argument is spurious.

It is well-settled that to hold a municipality liable under *Monell*, the underlying violation must be committed by an employee of the municipality. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (if a municipal employee "inflicted no constitutional injury on [plaintiff], it is inconceivable that [the municipality] could be liable"); *see also Kiriakidis v. Borough of Vintondale*, 609

F. App'x 713, 718 (3d Cir. 2015). In *Heller*, the Supreme Court further explained that "if a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point." *Heller*, 475 U.S. at 799.

Whether DA Baldwin, **who is not an employee of Reading**, violated *Brady* is irrelevant to the claims against Reading. There is no question, nor does Johnson raise any facts to raise one, that DA Baldwin was not employed by Reading nor subject to Reading's control, its policies, or its training. Johnson similarly does not present any arguments that an independent individual's actions can satisfy the underlying violation requirement. Regardless, an independent, non-employee of course cannot form the relevant basis because *Monell* liability must be based upon a causal connection between the alleged lack of training and alleged injury. *Thomas v. Cumberland County*, 749 F.3d 217, 222-224 (3d Cir. 2014) (the causation inquiry must "focus[] on whether the injury could have been avoided had *the employee* been trained under a program that was not deficient in the identified respect") (emphasis added). Johnson's references to DA Baldwin as the "underlying violation" are nothing more than a transparent attempt to mislead This Court or intentionally confuse the issues. That attempt should be rejected.

Accordingly, because there was no underlying violation, the District Court's Order granting summary judgment on the *Monell* claim should be affirmed.

**B. <u>The failure to train theory fails.</u>**

Even assuming there was an underlying violation, which there was not, the failure to train theory still fails. Johnson argues only that the District Court erred by failing to consider a single incident theory of liability. Accordingly, he has waived any argument under the pattern of violations theory.

Regardless, Johnson is wrong. The District Court considered and rejected a single incident theory. *See* ECF 173, p. 9 (JA14), referring to both the pattern of violations and the single incident theories. A review of the failure to train standard demonstrates that Johnson fails to support such a theory.

In order to establish a failure to train *Monell* claim, a plaintiff must show, through the production of evidence, that the failure to train "amounts to 'deliberate indifference' to the rights of the persons with whom [the municipality's] employees come into contact." *Johnson v. City of Philadelphia*, 975 F.3d 394, 403 (3d Cir. 2020). Deliberate indifference is a "stringent standard of fault" that requires "proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997). Ordinarily, a plaintiff must show that "[a] pattern of similar constitutional violations" put the

city on notice that, by failing to act, it was being deliberately indifferent to civilians' rights. *Connick v. Thompson*, 563 U.S. 51, 62 (2011).

In *Johnson*, the Third Circuit affirmed dismissal of a *Monell* claim where the plaintiff failed to show the requisite pattern of constitutional violations. *Id*. As the Third Circuit has held:

> [A] municipality's failure to train…only gives rise to a constitutional violation when that failure amounts to deliberate indifference to the rights of persons with whom the police come into contact. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). We have held that a failure to train, discipline or control can only form the basis for section 1983 municipal liability if the plaintiff can show both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate. *See Bonenberger v. Plymouth Township*, 132 F.3d 20, 25 (3d Cir. 1997).

*Montgomery v. De Simone*, 159 F.3d 120, 126-27 (3d Cir. 1998).

It is only where the failure to train reflects a deliberate or conscious choice by the municipality that a municipality may be liable under Section 1983. *Harris*, 489 U.S. at 389. Accordingly, when *Monell* claims are based on a failure to train, the municipality's training program must be so inadequate that "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy [of the current training] so likely to

result in the violation of constitutional rights, that the policy makers of the city can reasonably be said to have been deliberately indifferent to the need." *Id*. at 390.

A failure to train theory may hypothetically be viable on a single incident theory. "To find deliberate indifference from a single-incident violation," the risk of injury must be a "highly predictable consequence" of the municipality's failure to train and supervise its employees. *Thomas v. Cumberland County*, 749 F.3d 217, 225 (3d Cir. 2014) (*quoting Connick*, 563 U.S. at 63-64). Thus, "[l]iability in single-incident cases depends on '[t]he likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights.'" *Id*. at 223-24. To prove a single incident theory, the need for training must be "so obvious, that the failure to do so could properly be characterized as deliberate indifference to constitutional rights." *Id*. at 223. But while the Supreme Court has hypothesized that the claim is theoretically possible in a narrow range of circumstances, it has never found this high bar to have been satisfied. *Hightower v. City of Philadelphia*, 130 F.4th 352, 357 (3d Cir. 2025). As This Court recognized recently in *Hightower*, the only hypothetical example that has been recognized by the Supreme Court – where a city arms its police with guns and sets them loose without any legal training on when to use them – is extreme. *Id*., *citing City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989). As This Court has held, it is "vanishingly rare" to establish single-incident municipal liability.

*Miller v. City of Philadelphia*, 162 F.4th 88, 94 (3d Cir. 2025); *see also Alvarado v. City of Philadelphia*, 2026 U.S.App.LEXIS 21286, *8-11 (3d Cir., July 17, 2026). While This Court has recognized a single-incident theory where, due to the frequency of fighting and the volatile nature of a prison setting, that the need for de-escalation training was so obvious that a single incident could support an inference of deliberate indifference (*Thomas*, 749 F.3d at 225), the relevant right at issue – that corrections officers may be liable under the Eighth and Fourteenth Amendments for failure to "take reasonable measures to protect prisoners from violence at the hands of other prisoners" – was clearly established. *Thomas*, 749 F.3d at 223, *citing Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997).

In these circumstances, where the alleged underlying violation is the alleged failure of Reading Detectives Cabrera and Dietrich to turn over evidence favorable to Johnson to the prosecutor, a single incident theory is impossible. As set forth herein above, law enforcement officers like Cabrera and Dietrich did not have a duty to turn over such evidence to the prosecutor until 2005 when *Gibson* was decided. Accordingly, even if there was no training, which is denied, a violation of rights was not a predictable consequence – in fact, it could not be a consequence at all, because the right was not clearly established. *Gibson*, 411 F.3d at 443-44. Moreover, the Supreme Court rejected a single incident theory in similar circumstances, finding that prosecutors lacking training in specific *Brady* evidence

could not support a single incident theory. *Connick*, 563 U.S. at 67.

In any event, the record reveals that Reading detectives were trained on Constitutional issues, including disclosure of evidence favorable to the accused, despite no clearly established duty. *See*, *e.g.*, the deposition of Charles Broad, JA515, JA525.

Accordingly, because a single incident theory, which is itself an extremely narrow theory of liability, is not viable in this case, the *Monell* claim fails and the District Court's order granting summary judgment should be affirmed.

## III. The District Court Properly Granted Summary Judgment on the Fabrication of Evidence Claims

Johnson argues that the District Court alleged "ignored" evidence that Cabrera and Dietrich fabricated evidence with respect to the statements of prosecution witnesses Robles, Cintron and Velazquez. His argument fails for a number of reasons: (1) the District Court did not "ignore" evidence – to the contrary it properly found that the evidence Johnson presented did not support a claim; (2) Johnson has put forth no evidence that Cabrera or Dietrich coerced or coached witness George Robles to testify falsely about his criminal activity and witnesses Luz Cintron and Mylta Velazquez to testify falsely against Johnson; (3) much of the "evidence" Johnson presented is not admissible to defeat summary judgment; and (4) even if it were admissible, the evidence is not fabricated, but is at most simply incorrect or disputed.

This Court has recognized that a plaintiff can bring a "stand alone" Section 1983 claim for a due process violation based upon the use of fabricated evidence. *Black v. Montgomery Cnty.*, 835 F.3d 358 (3d Cir. 2016). To prevail on such a claim, there must be "a reasonable likelihood that, absent that fabricated evidence, the [plaintiff] would not have been" convicted. *Boseman v. Upper Providence Twp.*, 680 F.App'x 65, 69 (3d Cir. 2017) (quoting *Black*, 835 F.3d at 371). A plaintiff must demonstrate a "'meaningful connection' between the injury and the fabricated evidence." *Id*. (quoting *Black*, 835 F.3d at 371). Additionally, "the evidence must be 'so significant that it could have affected the outcome of the criminal case.'" *Id*. (quoting *Black*, 835 F.3d at 371).

Moreover, plaintiffs face a "notable bar" to reach the standard required to demonstrate that evidence is fabricated. *Id*. at 70 (quoting *Black*, 835 F.3d at 372). Particularly, "testimony that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong." *Id*. (citing *Black*, 835 F.3d at 372) (quoting *Halsey v. Pfeiffer*, 750 F.3d 273, 295 (3d Cir. 2014)). Further, courts require "***persuasive evidence*** supporting a conclusion that the proponents of the evidence are aware that evidence ***is incorrect*** or that the evidence is offered in bad faith." *Black*, at 372 (quoting *Halsey*, 750 at 295) (emphasis added). As This Court explained in *Halsey*, these hurdles are significant and "it will be the unusual case in which a police officer cannot obtain summary

judgment in a civil action charging him with having fabricated evidence used in an earlier criminal case." *Halsey*, 750 F.3d at 295.

Johnson's claim that the District Court ignored the evidence he presented patently false. The District Court addressed the evidence and found that none of the evidence supported Johnson's claims, which is quite different than "ignoring" it. *See* ECF 173, p. 17-19 (where the District Court expressly addressed Johnson's claims).

Johnson has also failed to put forth any evidence that Cabrera or Dietrich coached or coerced George Robles. While Cabrera and Dietrich took or witnessed statements by George Robles, in which Robles implicated Johnson in the Banks Murders and Martinez Murders, nothing in the record supports the allegation that either Detective coached or coerced Robles. *See*, *e.g.*, December 17, 1996 statement of Robles regarding the Martinez Murder (JA271-74); the December 17, 1996 statement of Robles regarding the Banks Murders (JA268-270); and the deposition testimony of Cabrera (JA668-69). Similarly, nothing in the record supports a conclusion that Cabrera or Dietrich coached or coerced Mylta Velazquez, who was interviewed by Detectives Vega and Schade. *See*, *e.g.*, the Statement of Velazquez (JA277-78) and the deposition testimony of Cabrera (JA669-70). Likewise, nothing in the record supports the conclusion the Cabrera and Dietrich coached or coerced Luz Cintron, who gave a statement to Detective

Vega, which was only witnessed by Cabrera. *See*, *e.g.*, September 13, 1997 Statement of Luz Cintron (JA793-796) and the deposition testimony of Cabrera (JA668-69).

While Johnson has presented hearsay statements, purportedly attributed to Cintron and Velazguez, that "police officers," George Robles and "detectives" coerced them and threatened them (JA430-31 and JA460), the evidence does not support any claims against Cabrera or Dietrich.

The statements attributed to Cintron do not mention Cabrera or Dietrich at all, but only offer vague references to "police" and a man identifying himself as George Robles. *See* the Greg Blender Declaration (JA430) and the Dana Cook declaration (JA431). Similarly, the statement attributed Velazquez mentions only "Detectives," not Cabrera or Dietrich. *See* the Joseph Thornton declaration (JA460). To the extent that Johnson relies upon the Declaration and Affidavit of Edwin Casiano (JA470-71), there is nothing in the document, even if it were admissible, which is denied, that supports the claims that Cabrera and Dietrich coerced or coached any witness. Similarly, the Declaration of Bryant Graham, purporting to relay statements of Joseph Stajkowski, does not present any evidence that Cabrera or Dietrich coerced, coached, or otherwise fabricated evidence related to the Banks Murders or the Martinez Murder.

To the extent that Johnson tries to fabricate inconsistencies between Det. Vega's testimony and Det. Cabrera's testimony concerning whether Robles dealt drugs, their testimony is not inconsistent, and, in any event, irrelevant and does not evidence any fabrication, coercion or coaching.

Moreover, as argued before the District Court, these statements and affidavits are not admissible evidence sufficient to defeat summary judgment because each is inadmissible double hearsay. The statements attributed to Cintron, Velazquez, and Stajkowski do not come from them directly, but rather are contained in declarations from non-witness investigators who did not testify. *See* F.R.C.P. 56(c)(2); F.R.E. 801(c), 805; *see also Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009) ("Hearsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment."); *Giuliani v. Springfield Twp.,* 238 F. Supp. 3d 670, 691 n.9 (E.D. Pa. 2017) (O'Neill, J.) (declining to consider double-hearsay at summary judgment), *aff'd*, 726 F. App'x 118 (3d Cir. 2018). Likewise, Johnson relies on the Affidavit of Edwin Casiano (JA470-71), which is hearsay incapable of defeating summary judgment. *Murray v. IBEW Local Union No. 98 Pension Plan*, 2011 U.S.Dist.LEXIS 53284 at * 10-11 (E.D.Pa., May 17, 2011) ("conclusory allegations in [plaintiff's] affidavits, without more, in the face of…documentary evidence, are insufficient to create a genuine issue of material fact" to defeat summary judgment) (citations omitted).

It is well-established that a party cannot defeat summary judgment by relying upon inadmissible evidence and conclusory, self-serving affidavits. *Dalton v. Little Lion*, 2021 U.S.Dist.LEXIS 67100 at *6 n.3 (E.D.Pa., Apr. 6, 2021) (a party that bears the burden at trial may not rely on inadmissible evidence in opposition to summary judgment) (*citing Smith v. City of Allentown*, 589 F.3d at 693); *Maldonado v. Ramirez*, 757 F.2d 48, 51 (3d Cir. 1985). Similarly, a party cannot create a genuine dispute by relying on affidavits not based upon fact, but merely offering conclusions. *Maldonado*, 757 F.2d at 50-51 (affidavits that that are essentially conclusory, not based upon personal knowledge, or lacking in evidence that witness is competent to testify on the matters therein are inadmissible to defeat summary judgment).

These "statements" are neither admissible to defeat summary judgment, nor, if they were, sufficient to create an issue of fact to support Johnson's claim that *Cabrera* and *Dietrich* (not nameless "police" or "detectives") coached or coerced witnesses. To allow such evidence would be to invite speculation, which cannot defeat summary judgment. *Parker*, 823 Fed.App'x at 72-73; *Razak*, 951 F.3d at 144. Rather, Johnson's "evidence" merely, and at most, tries to portray Cabrera and Dietrich negatively. But that is not enough to support a fabrication of evidence claim.

Accordingly, despite Johnson's protestations to the contrary, he has presented no evidence to support fabrication, coaching, or coercion. As such, This Court should affirm summary judgment on the fabrication of evidence claims.

## IV. Johnson Waives His Conspiracy and Punitive Damages Claims

It is well-established that issues not raised in an appellant's opening brief are waived on appeal. *F.D.I.C. v. Deglau*, 207 F.3d 153, 169-70 (3d Cir. 2000) (issues not raised in an opening brief are waived on appeal). Johnson fails to raise the dismissal of his conspiracy claim on summary judgment before the District Court in his opening brief. Accordingly, the issue is waived.

Moreover, where an appellant sets out an issue on appeal but fails to substantively argue it in his opening brief, the failure operates as a waiver. *Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993); *Simmons v. City of Philadelphia*, 947 F.2d 1042, 1065 (3d Cir. 1991) ("absent extraordinary circumstances, briefs must contain statements of all issues presented for appeal, together with supporting arguments and citations"). It is well settled that if an appellant fails to comply with these requirements on a particular issue, the appellant normally has abandoned and waived that issue on appeal and it need not be addressed. *Institute for Scientific Info., Inc. v. Gordon & Breach, Science Publishers, Inc.*, 931 F.2d 1002, 1011 (3d Cir. 1991).

Here, while Johnson identifies the issue of punitive damages, to which the District Court granted summary judgment, Johnson fails to offer any argument – instead just referring to his prior arguments and concluding that a jury could find reckless disregard for Johnson's rights. Johnson Bf., p. 56. Absent a specific argument, the issue is waived on appeal.

Out of an abundance of caution, however, if not waived, the punitive damages claim fails because (1) there is no underlying violation by Cabrera or Dietrich, as set forth herein at length and (2) Johnson has failed to present any evidence that Cabrera or Dietrich acted with callous or reckless disregard for his rights. *Brennan v. Norton*, 350 F.3d 399, 428-29 (3d Cir. 2003) (requiring evidence of callous or reckless disregard). Because there is no evidence that either Cabrera or Dietrich acted with the requisite level of culpability, the District Court's dismissal of the punitive damages claim should be affirmed.

## CONCLUSION

For the foregoing reasons, the decision of the District Court to grant The Reading Appellee's Motion for Summary Judgment was correctly decided as a matter of law, and accordingly, should be affirmed.

Respectfully submitted,

**MacMAIN LEINHAUSER PC**

Dated: September 28, 2026

By: */s/ David J. MacMain*
David J. MacMain
Attorney I.D. No. 59320
Brian C. Conley
Attorney I.D. No. 311372
433 W. Market Street, Suite 200
West Chester, PA 19382
*Attorneys for Appellees City of Reading, Angel Cabrera and Eileen Cardile, Personal Representative of the Estate of Bruce Dietrich*

## <u>CERTIFICATION OF ADMISSION TO BAR</u>

I, David J. MacMain, hereby certify as follows:

1. I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

2. Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

Respectfully submitted,

**MacMAIN LEINHAUSER PC**

Dated: <u>September 28, 2026</u>

By: *<u>/s/ David J. MacMain</u>*
David J. MacMain
Attorney I.D. No. 59320

**CERTIFICATION OF COMPLIANCE WITH FEDERAL RULE OF APPELLATE PROCEDURE 32(a) AND LOCAL RULE 31.1**

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify the following:

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because this brief contains 10,643 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii) of the Federal Rules of Appellate Procedure.

This brief complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure because this brief has been prepared in a proportionally spaced typeface using Word for Microsoft 365 in 14 point Times New Roman font.

This brief complies with the electronic filing requirements of Local Rule 31.1(c) because the text of this electronic brief is identical to the text of the paper copies, and a virus detection program the Vipre Virus Protection, version 3.1 was run on the file containing the electronic version of this brief and no viruses have been detected.

Respectfully submitted,

**MacMAIN LEINHAUSER PC**

Dated: September 28, 2026 By: */s/ David J. MacMain*
David J. MacMain
Attorney I.D. No. 59320

## CERTIFICATE OF SERVICE

I, David J. MacMain, hereby certify that on this 28th day of September 2026, a copy of the foregoing Brief for Appellees City of Reading, Angel Cabrera and Eileen K. Cardile, as personal representative of the Estate of Bruce H. Dietrich was electronically filed with the Third Circuit Court of Appeals, and service was made upon counsel of record through the Court's electronic docketing system.

Respectfully submitted,

**MacMAIN LEINHAUSER PC**

Dated: September 28, 2026 By: */s/ David J. MacMain*
David J. MacMain
Attorney I.D. No. 59320